**MARX et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 4452.

United States Court of Appeals
First Circuit.

Feb. 7, 1950.

Emily Marx, Alstead, N. H., for petitioners.

Sumner M. Redstone, Sp. Asst. to the Atty. Gen., (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before MAGRUDER, Chief Judge, and GOODRICH and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

These petitions for review of two decisions of the Tax Court of the United States raise questions with respect to the individual income tax liability of the petitioner Marx for the year 1940, and of the joint income tax liability of the petitioner Marx and her husband, the petitioner House, for the year 1941. For present purposes there is no occasion to state the voluminous facts in full detail. They adequately appear in the unreported findings of fact and opinion of the Tax Court entered on January 24, 1949. The statement which follows will suffice to illuminate the issues raised here.

During the years involved the petitioner, Victor House, and his wife, who for professional purposes goes by the name of Emily Marx, were practicing members of the New York bar with separate and independent offices in the City and State of New York. The petitioner Marx was also a member of the New Hampshire bar during those years and engaged in the practice of her profession in that state, where, it appears, the couple made their summer home. The income tax returns under consideration, which are on the cash receipts-calendar year basis, were filed with the Collector of Internal Revenue for the District of New Hampshire.

In her separate return for 1940 Emily Marx reported total receipts from all sources of seventeen odd thousand dollars, took deductions for business expenses of nearly eight thousand dollars and for taxes of nearly three thousand dollars, and claimed dependency credits for her infant son, her infant daughter, and her mother-in-law. The Commissioner disallowed her deduction for business expenses in toto, stating in his notice of deficiency as the reason therefor that "no competent evidence or appropriate information was submitted in substantiation thereof." He also disallowed part of her claimed deduction for taxes for lack of substantiation, increased her income in respects not here material, and held that she was not entitled to dependency credits for her daughter and mother-in-law

for the reason that they were not her dependents.

In their joint return for 1941 the petitioners reported their receipts and listed their deductions separately. House reported gross receipts of approximately thirty-five hundred dollars and took deductions for business expenses in the gross amount of nearly twenty-five hundred dollars, and Marx reported gross receipts of nearly six thousand dollars and deducted business expenses of over six thousand five hundred dollars. The Commissioner disallowed all business deductions of both petitioners *in toto* as before, again for the reason that "no competent evidence or appropriate information was submitted in substantiation thereof." He also added about one thousand dollars as rental income, disallowed a rental loss of nearly four thousand dollars claimed by House to have been sustained by him personally as the result of a lease from a family corporation at an annual rent of five thousand dollars a year of property in New Hampshire adjoining that used by the petitioners as their summer home, parts of which he sub-let, and made other adjustments not requiring recitation.

The taxpayers petitioned the Tax Court for review of the Commissioner's determinations, and with each petition filed a lengthy schedule listing separately the items of expense for each year which they claimed as proper business deductions. In their schedules appear items for stenographers' salaries, stationery, stamps and the like, which on their face would seem clearly to be business expenses. Also there appear items such as travel expense and telephone charges which on their face are ambiguous, and, in addition there appear a multitude of items, many of them small, for what would appear to be personal expenses for maintaining a home, such as care of grounds, spraying trees, painting, repairing and refinishing furniture, plumbing, roof repairs, and repairs to household electrical appliances such as vacuum cleaners, washing machines and waffle irons. Moreover there are also numerous items for theatre tickets, liquor, groceries, social and political club dues, tickets to public testimonial dinners, payments to department stores, subscriptions to magazines, including not only legal publications but also periodicals such as Time and Atlantic Monthly, items for hotel accommodations in New York, and even an item of $2.00 for dues to petitioner House's college fraternity, some, if not most, of which to say the least are suspect on their face as items of business expense.

The Commissioner answered the petitions, and they came on for hearing before the Tax Court in New York on April 27, 1948. At that time they were consolidated, and after opening statements by petitioner Marx, appearing *pro se* and for her husband, and by counsel for the Commissioner, House was called to the stand by his wife to testify with respect to the deductions claimed. After testimony with respect to general matters such as occupation and the like, the petitioners started to take up the items claimed as business expenses one by one, but this procedure soon resulted in exploration by the court of the possibility of agreement between counsel as to at least some of the items involved in order to expedite the trial. Eventually, as a result of considerable three cornered discussion, it was agreed that the trial would be postponed until the following month to give counsel an opportunity to reach as much agreement as possible with respect to the expense items. The trial resumed in New York on May 13, 1948, at which time counsel for the Commissioner called the court's attention to the record previously made before the judge who had presided initially, and to the schedules appended to the petitions above adverted to, and then said: "During the period between the opening of the hearing and today, the Respondent has had an opportunity of checking the list of items * * * and is satisfied that expenditures representing the figures on those lists were made. We do not recognize, however, that all of those items are proper deductions." Following this various items on both schedules were commented upon and discussed, a method was established whereby the disputed items in the schedules could be distinguished from those which were not, and then the following colloquy ensued:

"Mr. Clark:* (Interposing) What we need now is an explanation of these items on the list.

"Miss Marx: That's right.

"The Court: It is conceded by the Respondent that the items listed in the Exhibits attached to the petitions have been paid out?

"Mr. Clark: That is correct.

"The Court: By the Petitioners?

"Mr. Clark: That is right.

"The Court: The only question is the purpose for which they were paid."

Petitioner Marx then introduced her and her husband's joint return for 1941 as an exhibit, refreshed the court's recollection as to the point in her husband's direct examination at which the prior hearing had suspended, and then calling her husband back to the stand, resumed the trial with the question:

"Q. Mr. House, the Government has admitted that all of these items, moneys was spent, but they would like an explanation of your reason for claiming that each one of these was a business expense.

"Now, the National Republican Club. In what way was your membership in that club related to your business?"

Following this the petitioner Marx by her husband's testimony, and later by her own, attempted to justify each challenged deduction. They attempted to justify their deductions of household expenses as to the New York house on the ground that it was property held for rental during the summer months, and hence was property held for the production of income, and that the enumerated items of household expense allocated to it were all items necessary to maintain the property for renting purposes, and as to the summer place in New Hampshire on the ground that they entertained clients there, used it as a base for their professional operations in New England and Canada, and also that the petitioner Marx used it as an office in the conduct of her New Hampshire practice, and that the household expenses allocated to it were all reasonable and necessary to maintain and

operate it for these business purposes. Their justification of their deductions for food, liquor, theatre tickets etc. was that these items constituted expenses for entertaining clients; that social and political clubs dues were deductible as expenses undertaken for the purpose of making and keeping social contacts in order to attract and keep clients; that the expense of travel between New Hampshire and New York was a justifiable deduction because of their use of their summer place as a sort of second office for carrying on the practice of their profession; and that the money spent at department stores was properly deductible because it was spent for gifts, which they were unable to describe, made to clients, whom they were not able to identify. Full elaboration of the various reasons advanced for the deductibility of other items claimed as business expenses is unnecessary. It will suffice to say that in many instances the reasons advanced for their deductibility are farfetched and the supporting evidence vague.

The Tax Court in a carefully considered opinion allowed some of the deductions claimed and disallowed others and entered decisions under its Rule 50, Rules of Practice, Tax Court, 26 U.S.C.A. § 1111, pursuant to its Memorandum Findings of Fact and Opinion redetermining the deficiencies for both years in amounts less than the Commissioner's determinations.

■ The petitioner Marx argues with apparent earnestness that the procedure adopted by the Tax Court at the resumed hearing deprived her and her husband of due process of law. This she says is for the reason that the pleadings raised only the issue of whether or not the expenditures claimed as business expenses had actually been incurred, whereas at the hearing that issue vanished because of the Commissioner's admission of payment of every item enumerated, but nevertheless the trial proceeded with respect to the issue of whether all those expenditures constituted deductible items of business expense—an issue which she says was not raised by the

*Counsel for the Commissioner.

942

pleadings and was one she was not prepared to try.

In view of the record it is almost impossible to understand how any such argument as this could seriously be advanced. The pleadings (the taxpayers' petitions and the Commissioner's answers thereto) clearly present the full issue of whether or not the payments claimed were actually made, and if made, whether they were properly deductible, and the fact that one of those issues, the issue of actual payment, disappeared at the hearing because of the Commissioner's concession could only aid the petitioners by limiting the scope of the issue they were called upon to litigate, and this could not possibly prejudice them. If petitioner Marx, in spite of her remarks at the outset of the resumed hearing quoted above, and in spite of the theory on which without objection on her part she proceeded to try the case, did not in fact understand, and was not prepared to try the only issue left in the case by the concession of the Government, i. e. the issue of the deductibility of some of the payments concededly made, which seems inconceivable, she has no one to blame but herself.

 The petitioners' next argument is equally without merit. They contend that the Commissioner's blanket disallowance of any deductions whatever for business expense is obviously arbitrary and excessive on its face for clearly some of the deductions taken, such for instance as those for stenographers' salaries and certain items for taxes, were unquestionably proper. Then they say that this arbitrary action of the Commissioner renders his deficiency determinations void, that a void determination by the Commissioner is a nullity, and as such constitutes no challenge whatever to the returns, with the result that the rule of Virginian Hotel Corp. v. Helvering, 319 U.S. 523, 527, 63 S.Ct. 1260, 1262, 87 L.Ed. 1561, 152 A.L.R. 871, applies in which it is said "Deductions stand if the Commissioner takes no steps to challenge them."

The argument is ingenious but rests upon a basic misconception. In the first place the Supreme Court in the Virginian Hotel Corp. case supra, when using the language quoted above, was not addressing itself to the situation presented when the Commissioner has made an arbitrary or mistaken determination of deficiency. It was addressing itself to the situation presented when the Commissioner has failed to challenge a deduction taken by a taxpayer by making any deficiency determination at all. In the second place an arbitrary determination of deficiency by the Commissioner is not void and therefore a nullity. Such a determination is invalid, and if invalidity on that score can be established by the taxpayer, ground for redetermination by the Tax Court has been established. This is clearly set out in Helvering v. Taylor, 293 U.S. 507, 515, 516, 55 S.Ct. 287, 291, 79 L.Ed. 623, a case heavily relied upon by these petitioners, in which it is said: "Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid", and then a little later on: "On the facts shown by the taxpayer in this case, the board should have held the apportionment arbitrary and the commissioner's determination invalid. Then, upon appropriate application that further hearing be had, it should have heard evidence to show whether a fair apportionment might be made and, if so, the correct amount of the tax." The point is not worthy of further discussion or the citation of additional cases. However, see Laird v. Commissioner of Internal Revenue, 3 Cir., 85 F.2d 598, 601 and Durkee v. Commissioner of Internal Revenue, 6 Cir., 162 F.2d 184, 187, 173 A.L.R. 553, in both of which deficiency determinations made by the Commissioner were found arbitrary and excessive, but nevertheless held to constitute an adequate basis for further proceedings in the Tax Court to redetermine the correct amount of deficiencies.

 Nor did the Tax Court err in exercising its judgment to establish by approximation the amounts actually expended for business purposes by these taxpayers. While the amounts actually expended by them are conceded, the question remains with respect to a great many of the expenditures as to whether they were made for business purposes or for personal purposes. And the evidences with respect to the business

purpose of a large number of the expenses is certainly general, and in many instances vague. Under these circumstances approximation by the Tax Court is fully justified by the principle of Cohan v. Commissioner of Internal Revenue, 2 Cir., 39 F.2d 540, and Rugel v. Commissioner of Internal Revenue, 8 Cir., 127 F.2d 393.

The remaining questions raised by the petitioners are factual in their nature. They are many, and to cover them all would expand this opinion to inordinate length, wholly out of proportion to the merit of the contentions advanced. It will suffice to say that a careful reading of the entire record clearly establishes a firm basis in the evidence for every finding of fact made by the Tax Court, and discloses that in making its approximations it acted with restraint, tolerance, and even magnanimity, on a record bearing strong indications of devious and ingenious, though transparent, schemes and devices for evading and defeating taxes.

The decisions of the Tax Court are affirmed.