B. H. Bickers and Lucille M. Bickers v. Commissioner. B. H. Bickers v. Commissioner.
Bickers v. Commissioner
Docket Nos. 72575, 73385.
United States Tax Court
T.C. Memo 1960-83; 1960 Tax Ct. Memo LEXIS 207; 19 T.C.M. (CCH) 440; T.C.M. (RIA) 60083; April 29, 1960
*207 Held, petitioners have failed to prove by a preponderance of evidence that they suffered deductible gambling losses in excess of $21,682 for 1953 and $46,219 for 1954. These amounts should be allowed as offsets to the amounts of admitted wagering gains of petitioner B. H. Bickers in the respective taxable years. Held, further, additions to taxes for negligence or intentional disregard of rules and regulations sustained. Henry Klepak, Esq., Texas Bank Building, Dallas, Tex., for the petitioners. David E. Mills, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent has determined deficiencies and additions to taxes of the petitioners as follows: Amount of
Additions
Petitioners
Year
Deficiency
to Tax *
B. H. Bickers and
Lucille M. Bickers
1953
$15,740.83
$ 787.04
B. H. Bickers
1954
46,097.20
2,304.86
The deficiency for 1953 is due to the addition to the net income shown on joint return of "(a) Losses $32,300.00." This adjustment is explained in the deficiency notice as follows: "(a) In your income tax return *208 for the year 1953 you reported $13,200.00 from ventures determined as follows: "Total winnings
$45,500.00
Total losses
32,300.00
Net winnings
$13,200.00
"Since you failed to substantiate any losses the amount of $32,300.00 claimed as such is hereby disallowed and your income for the year 1953 has been increased accordingly." The deficiency for 1954 is due to the same type of adjustment as was made by the Commissioner for 1953 and is explained in the same manner. The only difference is as to amounts. The losses which the Commissioner disallowed for 1954 as offsetting losses were $70,375 in amount. The additions to taxes are for negligence or intentional disregard of rules and regulations. The issues presented are: (1) Whether petitioners have proved that petitioner B. H. Bickers suffered gambling losses in the amounts of $32,300 and $70,375 in 1953 and 1954, respectively, which petitioners are entitled to use as offsets to the undisputed gains which petitioner B. H. Bickers had from wagering transactions in those years, and (2) whether the deficiencies are due to negligence or intentional disregard of rules and regulations. Findings of Fact A stipulation of facts filed by the parties is incorporated *209 herein by this reference. Petitioners B. H. Bickers and Lucille M. Bickers, husband and wife residing in Dallas, Texas, filed a joint income tax return for the taxable year 1953 with the district director of internal revenue at Dallas. B. H. Bickers (hereinafter referred to as petitioner) filed an individual income tax return for the taxable year 1954 with the district director of internal revenue at Dallas. During the years in issue, petitioner owned and operated a private club in Dallas, the income from which is not here in question. Petitioner was also a professional gambler, in which capacity he gained most of his income. He gambled on an individual basis in Texas, Colorado, Nevada, and California. His sporting operations were diversified, extending to participation in poker, dice, and gin rummy games, side bets on the same games, and wagers placed on the outcome of various athletic contests. His gambling occurred in various places, but principally in gambling casinos and country clubs. Most of petitioner's wagering took place in forms which involved a number of other participants, but some of the betting involved only one other person. Petitioner knew some of the people with whom *210 he gambled, but not all of them. Petitioner's only record of his gambling transactions was prepared as follows: At some point on each day that he gambled petitioner counted the money he was carrying prior to gambling. This occurred at any time from the time he arose in the morning until immediately before engaging in wagering. At some point after he finished gambling for the day, he again counted his money. On occasion petitioner engaged in several different forms of gambling between the times he counted his money, losing at one form and winning on others. Petitioner then recorded the increase or decrease in his money as winnings or losings in his gambling on any available slip of paper, such as a matchbook cover, a cocktail napkin, or a piece of golf scorecard. The record bore the date, the amount, and the letters "W" or "L" indicating net winnings or losings for that particular day. Upon return to his office in the club he owned, petitioner placed the slips of paper in a box in his desk. Sometime after the close of each taxable year, petitioner called his secretary and another employee, known as his bookkeeper, to his office. With his secretary's aid he arranged the slips in chronological *211 order and then read them to the bookkeeper who made entries in small notebooks, figuring a running balance. After the entries were completed, they were checked over and changes made. Petitioner threw the slips of paper away after completion of the small notebooks. The small notebooks for each of the taxable years were introduced in evidence as exhibits by petitioner. Neither petitioner's secretary nor his bookkeeper had any knowledge of the correctness of the figures on the slips of paper. They merely assisted in transferring the amounts shown thereon to the notebooks; they endeavored to do this accurately. The entries in the notebook for 1953 are as follows: 1953
Jan 1st
W 400
6914
6375
6187
Jan 4
W 861
Feb 12
L -115
Mar 13
W 116
Apr 20
L 240
1261
6799
6491
5947
Jan 9
L -532
Feb 13
L -206
Mar 16
W 611
Apr 23
W 1240
729
6593
7102
7187
Jan 15
W +439
Feb 17
L 404
Mar 21
L 501
Apr 25
W 941
Jan 18
W +361
1529
6189
6601
8128
Jan 20
W +961
Feb 21
W 331
Mar 24
W 416
Apr 30
W 500
2490
6520
7017
8628
Jan 23
L -88
Feb 24
W 87
Mar 26
L 787
May 4
W 986
2402
6607
6230
9614
Jan 25
W 1647
Feb 26
W 400
Mar 30
L 498
May 5
L 211
4049
7007
5732
9403
Jan 27
L 1516
Feb 28
L 1561
Apr 3
W 1103
May 7
W 406
2533
5446
6835
9809
Jan 29
W 721
Mar 1st
W 1260
Apr 7
W 100
May 8
W 202
3254
6706
6935
10011
Feb 2
W 1629
Mar 9
W 398
Apr 10
L 811
May 10
L 2150
4883
7104
6124
7861
Feb 4
W 1421
Mar 11
L 225
Apr 14
L 240
May 11
W 380
6304
6879
5884
8241
Feb 10
W 610
Mar 12
L 504
Apr 16
W 303
May 15
W 1110
6914
6375
6187
9351
9351
8578
12656
13650
May 19
W 100
July 4
W 300
Sept 11
L 675
Nov 7
L 305
9451
8878
11981
13345
May 20
W 240
July 6
W 1000
Sept 13
L 546
Nov 10
L 486
9691
9878
11435
12859
May 25
L 1824
July 10
L 650
Sept 17
W 530
Nov 12
W 590
7867
9228
11965
13449
May 26
L 706
July 12
L 407
Sept 19
W 45
Nov 14
W 460
7161
8821
12010
13909
May 27
L 775
July 15
W 840
Sept 21
W 437
Nov 18
W 300
6386
9661
12447
14209
May 29
W 335
July 20
W 260
Sept 25
L 150
Nov 21
W 486
6721
9921
12297
14695
June 1
W 1006
July 23
W 489
Sept 27
W 335
Nov 26
W 261
7727
10410
12632
14956
June 3
W 811
July 30
W 97
Sept 28
W 262
Nov 28
W 386
8538
10507
12894
15342
June 6
W 336
Aug 1
W 205
Sept 30
W 1165
Nov 29
W 101
8874
10712
14059
15443
June 8
L 330
Aug 8
W 316
Oct 1
W 297
Dec 1
W 480
8544
11028
14356
15923
June 10
W 600
Aug 10
W 510
Oct 3
L 841
Dec 3
W 655
9144
11538
13515
16578
June 10
L 462
Aug 13
W 255
Oct 5
L 136
Dec 5
W 265
8682
11793
13379
16843
June 12
L 54
Aug 15
L 1320
Oct 8
L 504
Dec 7
W 100
8628
10473
12875
16943
June 14
W 226
Aug 18
L 415
Oct 10
W 675
Dec 9
L 2050
8854
10058
13550
14893
June 18
W 115
Aug 21
W 361
Oct 13
L 285
Dec 10
L 241
8969
10419
13265
14652
June 20
L 1050
Aug 24
L 350
Oct 17
W 1010
Dec 12
W 540
7919
10069
14275
15192
June 21
W 401
Aug 26
W 1120
Oct 19
W 361
Dec 13
W 335
8320
11189
14636
15527
June 23
W 500
Aug 27
W 1241
Oct 22
W 209
Dec 16
W 247
8820
12430
14845
15774
June 25
W 323
Aug 30
L 890
Oct 26
L 640
Dec 18
W 245
16019
9143
11540
14205
Dec 20
L 1250
June 27
L 387
Sept 4
W 555
Oct 28
W 260
14769
8756
12095
14465
Dec 22
L 705
June 29
W 210
Sept 5
W 110
Oct 30
W 335
14064
8966
12205
14800
Dec 23
W 360
June 30
L 903
Sept 7
W 406
Nov 3
L 600
14424
Dec 28
L 904
8063
12611
14200
July 2
W 515
Sept 9
W 45
Nov 5
L 550
13520
Dec 29
L 320
8578
12656
13650
13200
*212 Many figures and letters in the notebook have been changed, either by partial erasures and insertion of new figures and letters or merely by writing new figures and letters over those originally written. Of the amounts recorded in the notebook as losses for 1953, petitioner sustained losses from gambling during that year in the amount of $21,682. The entries in the notebook for 1954 are as follows: 1954
Jan 1st
W 3500
5750
11750
8000
Jan 4
L 1500
Mar 2
W 2250
May 10
W 1250
July 24
W 500
2000
8000
13000
8500
Jan 7
W 1250
Mar 6
W 500
May 14
L 2500
July 28
W 1750
3250
8500
10500
10250
Jan 10
W 1000
Mar 10
W 250
May 18
L 2500
July 31
W 250
4250
8750
8000
10500
Jan 12
W 2250
Mar 15
L 1250
May 21
L 250
Aug 2
L 250
6500
7500
7750
10250
Jan 14
L 1500
Mar 19
L 1000
May 25
W 1250
Aug 6
L 1750
5000
6500
9000
8500
Jan 16
L 1000
Mar 22
W 2500
May 28
L 500
Aug 10
L 250
4000
9000
8500
8250
Jan 18
W 2750
Mar 25
W 1750
June 2
W 2750
Aug 14
W 2250
6750
10750
11250
10500
Jan 21
L 1750
Mar 29
W 1250
June 5
L 250
Aug 18
W 1500
5000
12000
11000
12000
Jan 25
W 1250
Mar 31
W 250
June 10
L 500
Aug 21
L 750
6250
12250
10500
11250
Jan 28
W 1750
Apr 3
W 750
June 14
L 250
Aug 25
W 2750
8000
13000
10250
14000
Jan 31
W 1750
Apr 6
L 1750
June 18
L 250
Aug 30
L 1250
9750
11250
10000
12750
Feb 2
L 750
Apr 10
L 1250
June 21
W 1500
Sept 3
L 1750
9000
10000
11500
11000
Feb 5
L 1250
Apr 14
L 2500
June 24
W 750
Sept 6
L 1500
7750
7500
12250
9500
Feb 9
L 1750
Apr 17
W 1250
June 28
L 1000
Sept 10
L 1225
6000
8750
11250
8275
Feb 12
W 750
Apr 20
W 2250
July 2
W 1250
Sept 14
W 2500
6750
11000
12500
10775
Feb 15
W 250
Apr 24
W 750
July 6
W 1750
Sept 18
W 1750
7000
11750
14250
12525
Feb 18
L 2500
Apr 27
W 1250
July 10
W 250
Sept 22
W 500
4500
13000
14500
13025
Feb 22
L 1500
Apr 30
L 2750
July 13
L 2500
Sept 25
W 1575
3000
10250
12000
14600
Feb 26
W 1000
May 3
W 250
July 16
L 1500
Sept 29
L 1900
4000
10500
10500
12700
Feb 28
W 1750
May 7
W 1250
July 20
L 2500
Oct 4
L 2250
5750
11750
8000
10450
10450
10500
10000
9500
Oct 9
L 1750
Nov 2
L 1500
Nov 27
W 1000
Dec 22
W 1500
8700
9000
11000
11000
Oct 12
W 2800
Nov 6
L 1500
Nov 30
W 1500
Dec 24
W 2000
11500
7500
12500
13000
Oct 15
L 2500
Nov 9
W 2500
Dec 3
L 2000
Dec 26
L 1500
9000
10000
10500
11500
Oct 19
L 500
Nov 13
W 500
Dec 7
L 1500
Dec 28
W 2500
8500
10500
9000
14000
Oct 23
W 500
Nov 16
L 1750
Dec 12
W 2000
Dec 29
L 1500
9000
8750
11000
12500
Oct 27
W 2750
Nov 20
L 250
Dec 15
L 500
Dec 30
W 500
11750
8500
10500
13000
Oct 30
L 1250
Nov 23
W 1500
Dec 18
L 1000
10500
10000
9500
*213 As was the case with the 1953 notebook, there are many changes and partial erasures in the notebook for 1954. Of the amounts recorded in the notebook as losses for 1954, petitioner sustained losses from gambling during that year in the amount of $46,219. Agents of the internal revenue service examined petitioner's returns several times in the years prior to the years here in question and in the course of such examinations they worked net worth statements on petitioner. On February 18, 1952, a notice was served upon petitioner advising him that he was not maintaining sufficient records for the purpose of determining his correct liability for Federal income taxes; that each taxpayer is required by law to make a return of his correct income; and that he must, therefore, maintain such accounting records as would enable him to do so. The notice contains, among other things, the following: "This is an official notice to you to keep complete records from which your tax liability may be properly determined. Continuing failure to keep such records may subject you to the penalties provided by law. The records you are required to keep include records showing in detail each transaction engaged *214 in by you, including the date thereof, the amount of each item of gross income received, and a description of the nature of the income so received. Detailed records should also be maintained of all payments made by you, including the date of each payment, the name of the payee, address of payee, and a description of the nature of each payment. "Section 29.54-1 of Regulations 111 provides in part as follows: "'The books or records required by this section shall be kept at all times available for inspection by internal-revenue officers, and shall be retained so long as the contents thereof may become material in the administration of any internal-revenue law.'" Petitioner failed either negligently or intentionally to keep and retain such books and records as to enable accurate determination of his liability to income taxes during the years in issue. Opinion BLACK, Judge: Petitioner attacks the respondent's determinations of deficiencies in his income taxes for the years 1953 and 1954 as arbitrary and invalid. For 1953 and 1954, petitioner returned $13,200 and $13,000, respectively, as sums which he claims represent his income from gambling during those years. On his returns he sought *215 no business deductions from those sums. During the course of investigation by an internal revenue agent, petitioner produced two small notebooks in which he had listed $45,500 and $83,375 as winnings from gambling received in those years. He had offset these winnings by claimed losses of $32,300 in 1953 and $70,375 in 1954. Respondent's deficiency notices increase petitioner's income for those years by the amounts shown in the notebooks as losses. It is clear from the record that each amount entered in the notebooks as a winning represented gain from at least one closed gambling transaction and in some instances the net gain on several closed gambling transactions. The yearly totals of the daily winnings were includible in petitioner's annual gross income as defined in section 22(a) of the 1939 Code and section 61(a) of the 1954 Code. [1] Cf. Winkler v. United States, 230 F. 2d 766. But petitioner is entitled to offset his wagering gains by his wagering losses. Section 23(h), 1939 Code, reads: "(h) Wagering Losses. - Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." Section 165(d), 1954 Code, which is applicable to the taxable *216 year 1954, is to the same effect. Respondent, in the deficiency notices, disallowed, as unsubstantiated, deduction of claimed gambling losses as shown in the notebooks in the amounts of $32,300 and $70,375 in 1953 and 1954, respectively. In the year immediately prior to the years in issue petitioner had been served with a notice to maintain and retain *217 records from which his tax liability could accurately be determined. Petitioner's only records of the claimed losses are, at best admittedly secondary evidence, prepared after the close of each taxable year from various types of memoranda described in our Findings of Fact. Respondent has accepted the winnings as shown in the notebooks compiled by petitioner for the years 1953 and 1954 as being correct but has refused to accept as being substantiated the wagering losses shown on such notebooks. Therefore, in his determination of the deficiencies respondent has included in petitioner's income all of his wagering gains shown in the notebooks and has not allowed any offsetting losses shown in the same notebooks. Respondent called no witnesses in support of his determination, but, as we said in Anthony Delsanter, 28 T.C. 845, at 858: "The burden was on the petitioner to show that the determination was erroneous. If that burden was difficult to meet by reason of their destruction of their records, it is a situation that they created for themselves. But they cannot shift the burden to the Commissioner and then complain that, since he has not put witnesses on the stand justifying his determination, *218 it is arbitrary and must therefore be disapproved. * * *" Although we have concluded that respondent's disallowance of offsetting losses was erroneous in part, we do not conclude that it is arbitrary and invalid as petitioner contends. Cf. Marx v. Commissioner, 179 F. 2d 938. We must now consider what losses, if any, petitioner has proved that he suffered during the year in issue. "In seeking a deduction the taxpayer has a burden greater than merely proving the Commissioner wrong; he must establish the essential facts from which a correct determination can be made." Mahler v. Commissioner, 119 F. 2d 869, 870. Petitioner asserts that he suffered the losses reflected in the notebooks. After a careful consideration of all the evidence in the record, we are unable to accept petitioner's claim that he incurred the offsetting wagering losses to the extent that he claims. His testimony was to the effect that at some point in the day prior to gambling he counted his money and he counted it again subsequent to gambling, apparently shortly after cessation of daily gambling activities. He further testified that he made personal expenditures while gambling. There is no evidence that he maintained *219 a separate "bankroll" for gambling. The opportunity, under such a system, for including extensive personal expenses in the daily decreases in cash which petitioner recorded as losses is so clear that we are unable to accept the figures in the notebooks as truly portraying his gambling losses. We are satisfied, however, from the whole record, that petitioner suffered substantial gambling losses, as well as gains, during the years in issue, and that loss entries in the notebooks, adjusted to reflect omission of those of which we are unconvinced, are reflective of the wagering losses sustained. We have concluded, therefore, in the exercise of our best judgment and bearing heavily upon petitioner whose inexactitude is of his own making, that petitioner suffered offsetting wagering losses during the years in issue in the amounts set forth in our Findings of Fact. Cf. Cohan v. Commissioner, 39 F. 2d 540. Respondent has determined additions to the taxes here in issue for negligence or intentional disregard of rules and regulations under section 293(a), 1939 Code, and section 6653(a), 1954 Code. Petitioner had been subjected to investigations by internal revenue agents at other times prior *220 to the years in issue. In 1952 he was served, pursuant to section 54(b), 1939 Code, with a notice to maintain and retain adequate records from which his tax liability could be determined. We have already concluded that petitioner's records did not accurately reflect his income, and viewing the facts in their most favorable light, petitioner was, at best, negligent in failing to maintain and retain better records. We sustain, therefore, these additions, modified to reflect reductions in the determined deficiencies. Decisions will be entered under Rule 50. Footnotes
*. Imposed under section 293(a), Internal Revenue Code of 1939, for taxable year 1953, and under section 6653(a), Internal Revenue Code of 1954↩, for taxable year 1954.
1. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * [For the purposes of this case, section 61(a) of the 1954 Code is to the same effect.]↩