T.C. Memo. 1998-224

UNITED STATES TAX COURT

RAYMOND O. WRIGHT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 273-96.                    Filed June 24, 1998.

Raymond O. Wright, pro se.

<u>Kevin M. Curran</u>, for respondent.


MEMORANDUM OPINION

GALE, <u>Judge</u>:  Respondent determined deficiencies in petitioner's 1987 and 1989 Federal income taxes in the amounts of $3,777 and $6,500, respectively, and additions to tax under

section 6651(a)(1)[1] for 1987 and 1989 in the amounts of $358 and $1,556, respectively.

After concessions, the issues for decision are as follows: (1) Whether petitioner has been denied due process by respondent's actions such that petitioner is entitled to a decision in his favor on all contested issues. We hold that petitioner has not been denied due process. (2) Whether petitioner is liable for self-employment taxes on income received in 1987 and 1989.[2] We hold that he is. (3) Whether petitioner is liable for additions to tax for 1987 and 1989 under section 6651(a)(1). We hold that he is. (4) Whether petitioner is liable for a penalty under section 6673. We hold that he is not.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

---

[1] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Although petitioner failed to assign error to respondent's determinations of liability for self-employment tax, petitioner did raise this issue in his trial memorandum and at trial. Respondent has objected to our consideration of this issue on the grounds that it was untimely raised and consideration of it would prejudice respondent. Respondent received notice that petitioner intended to dispute his liability for self-employment tax at least as early as the service of petitioner's trial memorandum, which respondent received 16 days before the first day of trial and 23 days prior to the second day of trial held 1 week later. We shall accordingly consider this issue as if properly raised by petitioner.

At the time the petition was filed, petitioner resided in New York, New York. Petitioner's taxable year was the calendar year. Petitioner did not file returns for 1987 and 1989. On September 27, 1995, respondent issued a notice of deficiency to petitioner in which it was determined that petitioner had (i) taxable income of $22,535 in 1987, of which $7,900 was determined to be self-employment income, and (ii) taxable income of $31,270 in 1989, of which $12,150 was determined to be self-employment income. The notice also determined that petitioner was liable for additions to tax under section 6651(a)(1) for failure to file for both years.

Petitioner admits that he received taxable income in the amounts determined, but disputes that any portion of such income in either year was self-employment income. Petitioner also disputes his liability for the additions to tax determined by respondent. Petitioner further contends that, in addition to relief from the additions to tax, he should be relieved of liability for some or all interest and should have all issues in the case resolved in his favor because of errors, omissions, and delays by respondent that have deprived him of due process.

Denial of Due Process

Petitioner's due process complaint concerns his inability to obtain redress in these proceedings for what he contends are various errors, omissions, and delays on the part of respondent,

primarily during the administrative stage of this case but also to some extent after the filing of the petition. Specifically, petitioner faults respondent's failure at any time to explain to petitioner's satisfaction the grounds for the denial of petitioner's claims of reasonable cause for his failure to file in 1987 and 1989; he further cites errors and delays in respondent's handling of his case from the time he contacted respondent in 1991 to ascertain what he owed until the issuance of a notice of deficiency in 1995; he contends that respondent withheld evidence; and finally petitioner alleges that respondent's "decision-making process" with respect to him "was (racially) biased and arbitrary".

As to respondent's actions prior to the issuance of the notice of deficiency, it is well settled that this Court generally will not look behind the notice of deficiency to examine the evidence or the propriety of the motives, administrative policies, or procedures utilized by respondent in making a determination. Proesel v. Commissioner, 73 T.C. 600, 605 (1979); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974); Human Engg. Inst. v. Commissioner, 61 T.C. 61, 66 (1973). The rationale for this stance is that a trial before this Court is a proceeding de novo, and our determination must be based upon the merits of the case as presented here and not upon a record developed at the administrative level. Greenberg's

Express, Inc. v. Commissioner, supra at 328.  However, one recognized exception to this general rule occurs when there is substantial evidence of unconstitutional conduct by respondent in determining the deficiency.  Church of Scientology v. Commissioner, 83 T.C. 381, 447-48 (1984), affd. 823 F.2d 1310 (9th Cir. 1987); Riland v. Commissioner, 79 T.C. 185, 207 (1982); Greenberg's Express, Inc. v. Commissioner, supra at 328. Petitioner contends that respondent's decisions with respect to him were racially motivated.  While decisions by a government official based on impermissible considerations such as race may constitute a violation of equal protection, see, e.g., Oyler v. Boles, 368 U.S. 448 (1962), petitioner has presented no evidence to substantiate his claim, and our review of the entire record in this case gives us no reason to suspect it may be true. Essentially, respondent's decisions in this case were to audit petitioner, to reject his claim of reasonable cause for failure to file, and to oppose his claim that he was not liable for self-employment tax.[3]  A decision to audit a nonfiler seems to us unexceptional, and since we sustain the other positions taken by respondent, we fail to discern bias in respondent's reaching them.  Thus, we decline to further examine respondent's actions preceding the notice of deficiency on this basis.

---

[3]  It should be noted that respondent disputes whether petitioner in fact contested his self-employment tax liability prior to submitting his trial memorandum in this case.

We note, however, that petitioner also makes a claim for relief from penalties and interest on the grounds of "errors and delays" by respondent during the period between petitioner's contact with respondent to ascertain his liabilities in 1991 and the issuance of the statutory notice in 1995. Petitioner's liability for the additions to tax for failure to file are unaffected by any actions taken by respondent in 1991 or thereafter because, as discussed more fully below, petitioner had accrued more than 5 months of unexcused delay in filing his 1987 and 1989 returns by the time of any contact with respondent in 1991, thus subjecting him to the maximum 25-percent addition to tax for failure to file in each year. With respect to interest, petitioner cites the same errors and delays by respondent between 1991 and 1995 as grounds for an abatement of interest. Consideration of petitioner's request for abatement of interest is premature, as there has been neither an assessment of such interest or a final determination by respondent not to abate interest. See sec. 6404(e), (g), as currently in effect.

Finally, with respect to postpetition proceedings, petitioner alleges that respondent withheld evidence. Petitioner is referring to respondent's refusal to produce certain documents from petitioner's administrative file on the grounds of executive or deliberative process privilege. In connection with the trial of this case, the Court conducted an in camera inspection of the

documents withheld on privilege grounds and concluded that the documents contained both mental impressions, legal analysis, and recommendations protected by the deliberative process privilege as well as factual statements not so protected. We ordered respondent to produce the nonprivileged portions of these documents to petitioner.[4] Petitioner now contends that his failure to obtain the privileged portions of the documents is a denial of due process. We reject that claim.

Self-Employment Income

Section 1401 imposes a tax on "self-employment income", which is generally defined as the gross income, less allowable deductions, derived by an individual from any trade or business carried on by him during the taxable year. Sec. 1402(a) and (b). The term "trade or business" for these purposes, however, does not include the performance of services by an individual as an employee. Sec. 1402(c)(3). "Employee" for this purpose is defined in section 3121(d)(2) as, inter alia,

> (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee;
> * * *

---

[4] Although the previously withheld information was, at best, of marginal significance to petitioner's case, to avoid any prejudice to petitioner the Court ordered a 1-week recess in the trial proceedings to afford petitioner additional time to prepare with respect to the newly disclosed information.

The regulations promulgated under section 3121(d) provide that an employer-employee relationship exists--

> when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. * * * [Sec. 31.3121(d)-1(c)(2), Employment Tax Regs.]

Petitioner argues that he performed services only in the capacity of an employee during the years in issue and therefore is not liable for any self-employment tax. The $7,900 determined by respondent to be self-employment income in 1987 was remuneration for petitioner's services paid by American Aerospace Industries, Inc. (Aerospace). Petitioner testified that his services for Aerospace were related to telephone marketing and consisted in reviewing past promotional materials and suggesting changes, editing telephone solicitation scripts and followup brochures, supervising telephone staff to insure that solicitations were being made correctly, and drafting press releases. Petitioner further emphasized that all of his work had to be performed on Aerospace's premises, that he was required to work specific hours, including a designated lunch hour, that he could not delegate any of his responsibilities or choose personnel, and that he had no discretion as to goals or timetables. The foregoing testimony was uncorroborated.

Aerospace paid petitioner by means of checks at 2-week intervals in the amount of $2,000,[5] which carried the notation "consulting fees".

The $12,150 in self-employment income determined by respondent for 1989 consists of $6,150 in remuneration for petitioner's services paid by Charles River Computers (Charles River) and $6,000 from Solutions Plus, Inc.[6]  A Confidentiality Agreement entered into by petitioner and Charles River provided that petitioner would receive $750 per week for "½ time" and makes reference to petitioner's performance of "consulting and other services".  A provision in the agreement prohibiting petitioner from engaging in any other business during the term of the agreement was lined through.  Petitioner did not provide specific descriptions of his work in 1989 except to claim that, as in 1987, such work was always performed on the purported employer's premises, was subject to established working hours, and was nondelegable.

---

[5]  One such check was for $1,900 instead of $2,000, which petitioner testified was due to the fact that he was "docked" one-half day's pay ($100) when he was absent from work one morning.

[6]  The only identification of the source of the 1989 amounts determined to be self-employment income was in petitioner's trial memorandum, where he appears to acknowledge that $6,150 of such amounts was from "Charles River Computers" and $6,000 was from "Solutions Plus".  Petitioner does not, in any event, dispute that taxable income in these amounts was received.

Petitioner claims that he was classified as an employee for unemployment insurance purposes by the New York State Department of Labor with respect to all work that he performed in 1987 and 1989 and also points to the fact that respondent determined that he received taxable unemployment compensation in 1989. The documentary evidence submitted by petitioner to corroborate his claim regarding the New York State Department of Labor falls far short of doing so. Nothing in these materials indicates what determination, if any, was made by the Department with respect to any given employer. Since the parties have agreed that petitioner worked in part as an employee in 1987 and 1989, and that petitioner had income in 1988, the fact that petitioner received unemployment compensation in 1989 is not probative with respect to whether he rendered some services as an independent contractor in 1987 and 1989.

With respect to 1987, even if we accept petitioner's uncorroborated testimony concerning his responsibilities at Aerospace, we do not believe that he has shown that Aerospace had control over the "details and means by which * * * [the] result is [to be] accomplished", sec. 31.3121(d)-1(c)(2), Employment Tax Regs., such that petitioner was an employee under common-law principles, particularly given the temporary nature of the assignment and Aerospace's characterization of the arrangement as "consulting". With respect to 1989, petitioner's testimony is

vague and conclusory and does not even address the specifics of his duties in that year. We conclude that he has failed to demonstrate error in respondent's determinations of liability for self-employment tax in 1987 and 1989 and accordingly sustain them.

Additions to Tax Under Section 6651(a)(1)

Respondent determined additions to tax for failure to timely file returns under section 6651(a)(1) with respect to both years in issue. Petitioner claims that his failure to file for these years was due to reasonable cause.

Section 6651(a)(1) imposes an addition to tax for failure to timely file a return unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The amount of the addition to tax is determined on a graduated basis, beginning at the rate of 5 percent of the amount required to be shown on the return if the failure is not more than 1 month, with an additional 5 percent for each additional month or fraction thereof that such failure continues, not exceeding 25 percent in the aggregate. Sec. 6651(a)(1).

To prove reasonable cause, a taxpayer must show that he exercised ordinary business care and prudence but nevertheless was unable to file the return when it was due. Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioner argues that he had reasonable

cause for his failure to file his 1987 return because he was preoccupied, beginning sometime in March 1988 and continuing through August 1988, with the disappearance of his mother while in the custody of a New York City homeless shelter or hospital, his subsequent search for her with inadequate assistance from the authorities or other family members, and his ultimate discovery in August 1988 that she had died and been buried unclaimed. Further, arrangements were protracted for her exhumation, funeral, and reburial, which did not occur until October 1988 due to demands of other family members. Even if we accept petitioner's chronology, the foregoing events do not constitute reasonable cause for his failure to file, because the failure continued well after the traumatic events which he cites. The incapacity of a taxpayer due to his illness or the illness of an immediate family member may constitute reasonable cause for a delay in filing a return. Williams v. Commissioner, 16 T.C. 893, 906 (1951); Tabbi v. Commissioner, T.C. Memo. 1995-463; Hayes v. Commissioner, T.C. Memo. 1967-80. However, the duration of the incapacity must approximate that of the failure to file. See, e.g., Tabbi v. Commissioner, supra (reasonable cause where late return not filed until 2 months after taxpayers' child's death); Hayes v. Commissioner, supra (taxpayers' and their children's illnesses during first half of year was reasonable cause for late return not filed until August of that year); see also Barber v.

<u>Commissioner</u>, T.C. Memo. 1997-206.  In the instant case, any incapacity petitioner experienced as a result of the traumatic events surrounding his mother's disappearance and death had ceased by sometime in 1989; in that year he obtained a filing extension with respect to his 1988 return and timely filed it in August.  Thus, there has been an unexcused delay of more than 5 months with respect to petitioner's 1987 return, which has never been filed, and we accordingly sustain respondent's determination of the addition to tax for 1987.

With respect to his failure to file for 1989, petitioner claims reasonable cause because at the time the return was due in April 1990, the statutory period of limitations was about to expire on any claim he might file against the City of New York with respect to the events surrounding the disappearance and death of his mother.  According to petitioner, he was preoccupied at this time with investigating his mother's treatment at the homeless shelter and with potential legal recourse against the City.  In light of petitioner's admitted capacity to attend to other matters, we conclude that he has failed to show reasonable cause for his failure to file for 1989.  Reasonable cause requires a showing of incapacity; "selective inability" to file tax returns while attending to other responsibilities does not demonstrate reasonable cause.  <u>Tabbi v. Commissioner</u>, <u>supra</u>; <u>Kemmerer v. Commissioner</u>, T.C. Memo. 1993-394; <u>Bear v.</u>

Commissioner, T.C. Memo. 1992-690, affd. without published opinion 19 F.3d 26 (9th Cir. 1994); Fambrough v. Commissioner, T.C. Memo. 1990-104.  Accordingly, we sustain respondent's determination of the addition to tax for 1989.

Section 6673 Penalty

At trial, respondent filed a motion for a penalty under section 6673 on the grounds that (i) petitioner's position in these proceedings is frivolous or groundless; or (ii) petitioner instituted or maintained the proceedings primarily for delay. Though ultimately unavailing, we do not believe that petitioner's position regarding his liability for self-employment taxes was frivolous.  Some of the delay in these proceedings was due to respondent's attempt to withhold documents from petitioner, a pro se litigant, on privilege grounds where the Court's in camera inspection revealed that the documents clearly contained nonprivileged matter.  This necessitated a delay in the proceedings to protect petitioner's rights.  Accordingly, respondent's motion is denied.

To reflect the foregoing and concessions,

An appropriate order will be issued denying respondent's motion for a penalty, and decision will be entered for respondent.