**Raymond WRIGHT, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**Docket No. 03–4671.**

United States Court of Appeals,

Second Circuit.

Argued: June 10, 2004.

Decided: Aug. 19, 2004.

Raymond Wright, Pro Se, New York, NY, for Petitioner–Appellant.

Mary E. Raccapriore, U.S. Dept. of Justice, Washington, D.C., (Eileen O'Connor, Assistant Attorney General, David English Carmack and Sarah Ann Ketchum, U.S. Dept. of Justice, Washington, D.C., on the brief), for Respondent–Appellee.

Before: WALKER, Chief Judge, WINTER, and JACOBS, Circuit Judges.

JACOBS, Circuit Judge.

Raymond Wright, who has appeared *pro se* throughout this litigation, appeals from a judgment of the United States Tax Court (Vasquez, *J.*), entered on December 26, 2002, rejecting his claim for interest abatement in respect of tax deficiencies from the years 1987 and 1989. Wright argues that he was denied a fair opportunity to present evidence of actions by the Internal Revenue Service ("IRS") that may have justified such an abatement. We vacate

the judgment of the Tax Court and remand for further proceedings because it is sufficiently unclear whether a tax refund for the year 1993 was ever sent to Wright by the IRS and because the factual record is generally unclear as to the statutory interest that Wright owes.

## Background

The IRS claims that Wright did not file tax returns for the years 1987 and 1989. Wright believes that he did, but is not sure. The IRS apparently began sending Wright delinquency notices as early as 1989. On June 19, 1992, Wright asked the IRS to file "substitute returns" on his behalf for 1987 and 1989, and such returns were filed for him on October 29, 1993. On November 23, 1993, the IRS audited Wright and charged him with deficiencies of $3,777.00 (plus interest and late penalties) for 1987 and $6,500.00 (plus interest and late penalties) for 1989. In February 1994, Wright asked the IRS if he could "just pay what he owes instead of filing the [1987 and 1989] tax returns." Appellee's Brief at 5. On or around May 1994, Wright filed an income tax return for the year 1993 requesting a refund. When the IRS reminded Wright that he still owed taxes for 1987 and 1989, Wright directed the IRS by letter to apply his refund of $1,046.90 (representing an overpayment of $971.78 and interest of $75.12) to the 1987 and 1989 deficiencies. The IRS refused to comply with this request—apparently because Wright neglected to sign the letter. On June 21, 1994, Wright paid the IRS $6,681.22, which was applied pro rata to Wright's outstanding tax liabilities for 1987

and 1989. *Wright v. Comm'r*, 84 T.C.M. (CCH) 675, 2002 Tax Ct. Memo LEXIS 332 (2002) (*"Wright II"*). It is not clear when the IRS first advised Wright that his 1993 refund was not credited against his outstanding balance for 1987 and 1989; in any event, Wright's remaining balance continued to accrue statutory interest.[1] The record does not clearly show what happened to Wright's 1993 refund.

By May 2000, Wright's total unpaid balance for 1987 and 1989 was big enough and so long delinquent that the IRS sent him a Notice of Intent to Levy for unpaid taxes. *Wright II*, 2002 WL 31875118, 2002 Tax Ct. Memo LEXIS 332 at *4. Wright sought a pre-levy hearing pursuant to 26 U.S.C. § 6330 based on a variety of alleged errors and abuses. Wright met with Appeals Officer Phyllis Cayenne on December 20, 2000 and his outstanding balance was reduced to correct the IRS's failure to give Wright withholding credits of $2,346.00 in 1987 and $278.00 in 1989. *Id.* at *5–*6, 2002 WL 31875118. A corresponding entry, made on May 7, 2001, abated $3,260.71 of statutory interest that had accrued on the 1987 deficiency. *Id.* at *6, 2002 WL 31875118. Appeals Officer Cayenne also determined that Wright had received his 1993 refund. *Id.* at *5–*6, 2002 WL 31875118.

The IRS informed Wright in April 2001 that it would proceed with a levy action against him and. Wright appealed the levy action, *pro se*, in Tax Court, "petitioning for an abatement of interest on grounds of IRS error and delay." Appellant's Tax Court Brief at 2.1. Wright's appeal expressed (understandable) confusion as to

---

1. After receiving a notice of deficiency in May 1995, Wright initiated a series of appeal proceedings in which he asserted various procedural and constitutional claims. *Wright v. Comm'r*, 75 T.C.M. (CCH) 2536, 1998 WL 331470, 1998 Tax Ct. Memo LEXIS 223 (1998) (*"Wright I"*). It does not appear that

the handling of Wright's 1993 refund by the IRS was a disputed issue in these proceedings. *See id.* All of Wright's claims were found to be without merit, and a panel of this Court affirmed in an unpublished table opinion. *Wright v. Comm'r*, 173 F.3d 848 (2d Cir.1999)..·

the amounts levied against him by the IRS for the years 1987 and 1989 and claimed that he was entitled to additional interest abatement because of an avalanche of procedural and substantive errors he alleged the IRS had made—including its handling of his 1993 refund and its alleged failure to credit his withholding credits from 1987 and 1989.

After a six-hour hearing, the Tax Court rejected all of Wright's arguments. The Tax Court found that "the evidence established that [Wright's] 1993 refund was mailed to him. Therefore [Wright's] 1993 refund could not be applied against his outstanding liabilities for 1987 and 1989" and did not entitle him to additional interest abatement. *Wright II*, 2002 Tax Ct. Memo LEXIS 332 at *15, 2002 WL 31875118. The Tax Court also ruled that, because Wright failed to file returns or pay taxes in 1987 and 1989, he was precluded from any additional interest abatement other than those that he had already received for his missing withholding credits. *Id.* at *11–*16, 2002 WL 31875118. The Tax Court also ruled that the IRS had not abused its discretion in proceeding with a levy against Wright because Wright had failed to follow up on an initial offer-in-compromise that he had made to Appeals Officer Cayenne on December 20, 2000. *Id.* at *16–*17, 2002 WL 31875118.

### Discussion

■ On appeal, Wright attacks the Tax Court's allegedly "wrongful" and "biased" rulings against him during his six-hour hearing. "The Tax Court's application of its own procedural rules is reviewed for abuse of discretion." *Sunik v. Comm'r*, 321 F.3d 335, 337 (2d Cir.2003). We see no such abuse in any of the many rulings attacked on appeal—most of which concern admissibility of evidence and the management of the hearing schedule.

■ However, we construe *pro se* appellate briefs and submissions liberally and interpret them to raise the strongest arguments they suggest. *See Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir.2003). In his brief and at oral argument, Wright raised two claims that the IRS could not refute or explain and that give us pause. First, Wright suggests that his current tax burden has been significantly increased by the IRS's alleged failure either to credit his 1993 refund to his outstanding tax balances for 1987 and 1989 or to send him his 1993 refund. Second, Wright suggests that, if the IRS in 1994 had properly credited his payments, his withholding credits, and his 1993 refund to his 1987 and 1989 tax balances, his total tax liability would have been extinguished entirely.

### I

■ We review a Tax Court's findings of fact for clear error. *Cinema '84 v. Comm'r*, 294 F.3d 432, 435 (2d Cir.2002). Here, the record that has been presented to this Court by Wright and the IRS is unhelpful. Wright's initial 2002 complaint to the Tax Court expressed bewilderment as to the nature of the tax balances that have been calculated (and recalculated) against him by the IRS. At oral argument and in its briefs, the IRS seemed equally unsure about several basic and crucial facts. The parties' confusion is understandable; the relevant timeline and tax amounts have been reconstructed using photocopied forms, computer screen printouts, and dot-matrix printouts of tax account balances. Many of these records have no supporting explanation (and therefore are inscrutable to any non-employee of the IRS), many are from time periods that are not the same, and even the documents that are from similar time periods often contain amounts that are inexplicably contradictory.

■ With regard to Wright's claim that the IRS has increased his tax burden by mishandling his 1993 refund for $1,046.90, it is undisputed that the IRS did not credit Wright's 1993 refund to his 1987 and 1989 tax balances; but the parties disagree as to what was actually done with Wright's 1993 refund. Wright claims on appeal (as he did in Tax Court) that his refund was never sent to him because it was "frozen" by the IRS. The Tax Court found that Wright's 1993 refund was "mailed" to him. *Wright II,* 2002 Tax Ct. Memo LEXIS 332 at *15, 2002 WL 31875118. The Tax Court did not state a clear basis for this finding, but evidently relied on live testimony from Appeals Officer Cayenne. At oral argument, the IRS's support for the Tax Court's finding on this point was decidedly tentative.

We see no evidence that Wright's 1993 refund was "sent" to him and thus believe that the Tax Court's conclusory finding on this issue was clear error. Relying exclusively on a "21–R" internal IRS computer report, Appeals Officer Cayenne testified in Tax Court that she assumed that a refund check was mailed to Wright because the report stated that the check was cut. Later Agent Cayenne testified, "I see there is a freeze code. That might indicate it was held. I'm not sure." The only other evidence that the IRS now provides to show that Wright's 1993 refund was actually mailed to him is a printout of this "21–R" report included in the appellate record, which the IRS claims shows that Wright's account had a "zero balance" for the tax year 1993. This "21–R" report is a computer screen printout of approximately twenty lines of abbreviations, alphanumeric codes, dates, and digits that are indecipherable to us without additional explanation. Moreover, we think that Wright has shown sufficient grounds to question the accuracy or meaning of such a "zero balance" even if it exists. Leaving aside the

doubts inspired by the IRS's past calculation errors against Wright's account, it seems reasonable to us that such a "zero balance" might appear on his account if a "frozen" check was cut, but never actually sent to him. *Cf. Roberts v. Comm'r,* 329 F.3d 1224, 1228 (11th Cir.2003) (reliance on internal IRS forms and records may be an abuse of discretion if the taxpayer shows an irregularity in IRS assessment procedures that calls into question the accuracy of such records); *Davis v. Comm'r,* 115 T.C. 35, 40, 2000 U.S. Tax Ct. LEXIS 48 at *11 (T.C.2000).

Given the lack of evidence supporting the Tax Court's finding on this issue, we believe that further proceedings are necessary to determine whether Wright was sent his 1993 tax refund and to determine the current tax ramifications if it was not sent.

**II**

■ At oral argument, Wright seemed to suggest that, if the IRS in 1994 had properly credited (i) his June 21, 1994 payment of $6,681.22, (ii) his subsequently discovered withholding credits of $2,346.00 in 1987 and $278.00 in 1989, and (iii) his 1993 tax refund of $1,046.90, his total tax liability for both 1987 and 1989 would have been extinguished. Although this claim by Wright is dubious because it omits the accrual of statutory interest up to June 1994, the record before us is sufficiently contradictory that we must remand for further proceedings as to the appropriate amount of statutory interest that Wright currently owes.

We begin with the certified tax records provided by the IRS on March 12, 2002, which were the same numbers cited by the Tax Court and (partially at least) in the briefs of the parties. According to these records, when the IRS filed "substitute

returns" on behalf of Wright in or about October 1993, it found that he owed $3,777.00 in 1987 and $6,500.00 in 1989, representing a total deficiency of $10,277.00 for both years. *See Wright II*, 2002 Tax Ct. Memo ·LEXIS 332 at *2–*3, 2002 WL 31875118. On the other side of the ledger, the sum of all possible credits Wright could have claimed in 1994 (including the currently disputed 1993 tax refund) was $10,352.12. But these offsets (assuming they all properly could be credited) obviously would be insufficient to discharge statutory interest accrued· on the 1987 and 1989 tax deficiencies through June 1994. Unfortunately, the certified tax records provided by the IRS on March 12, 2002 do not indicate the amount of interest that had accrued on Wright's account by this particular date, how it was calculated, or whether Wright's payment of $6,681.22 in 1994 stopped the running of interest on that amount. *See* Rev. Proc. 84–58, 1984–2 C.B. 501 ("making of either a payment or a deposit in the nature of a cash bond will stop the running of interest on only that amount that is actually remitted").

To show us the statutory interest that had accumulated on Wright's account by June 1994, the IRS points us to a report dated June 8, 1994 labeled "Income Tax Examination Changes." This report is dated thirteen days before Wright made his payment of $6,681.22 and he appears to concede that he received it. Consistent with the other IRS documents in the record, the report states that Wright's original tax liability for 1987 was $3,337.00 and

that, by June 1994, $1,952.00 in statutory interest had accrued on this deficiency. Unfortunately, for the year 1989 this report shows an initial tax deficiency of $5,478.00—at odds with the $6,500.00 deficiency figure relied upon by the Tax Court and used by the IRS and Wright throughout their briefs. We are at a loss to explain this ·discrepancy and the IRS's brief does not assist us.

In light of the IRS's admitted failure to credit Wright for his withholdings from the years 1987 and 1989, its current inability to account credibly for Wright's 1993 tax refund, and its inability to provide us with a record that is clear or clarified, we vacate the· ruling of the Tax Court and remand for further proceedings. Such a proceeding should confine itself to the following discrete factual issues: (i) whether Wright's 1993 tax refund was sent to him by the IRS in 1994, (ii) if not, whether Wright received timely notice from the IRS that his refund had not been applied to his 1987 and 1989 tax deficiencies, (iii) if not, whether his current tax liability should be consequently adjusted by, *inter alia*, an abatement of interest pursuant to 26 U.S.C. § 6404(e), and (iv) in any case, whether the current interest abatement that Wright has already received was correct in light of (a) the IRS's failure to give Wright appropriate withholding credits for 1987 and 1989, and (b) Wright's June 21, 1994 payment of $6,681.22.[2]

We caution Wright that our remand to the Tax. Court is limited to these four narrow issues and that the Tax Court is not authorized by this opinion to revisit or

---

2.  We also observe that Wright was entitled to receive an additional interest abatement based on the IRS's failure to give him a proper withholding credit of $278.00 in 1989. The Tax Court's decision stated that the IRS had represented that statutory interest related to this withholding credit would be abated. *Wright II*, 2002 Tax Ct. Memo LEXIS 332 at

*16 n. 9, 2002 WL 31875118. Although the IRS assures us that an interest abatement has been credited to Wright for this 1989 withholding credit, it has made no effort either to substantiate this claim in the appellate record or even to describe the amount of the abatement.

 

rehear previously adjudicated issues from the 1998 Tax Court hearing. *Wright I,* 75 T.C.M. (CCH) 2536. Nor is the Tax Court obligated to entertain new issues.

\* \* \* \* \* \*

For the foregoing reasons, the judgment of the Tax Court is VACATED and RE-MANDED for further proceedings.