**Ben Gary TRIESTMAN,**
Plaintiff–Appellant,

v.

**FEDERAL BUREAU OF PRISONS,**
United States of America,
Defendants–Appellees.

**Docket No. 05–3080–pr.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 18, 2006.

Decided: Dec. 5, 2006.

Ben Gary Triestman, pro se, Shady, N.Y.

William H. Pease, Assistant United States Attorney (for Barbara D. Cottrell,

Assistant United States Attorney) (Paula Ryan Conan, Assistant United States Attorney, of counsel), for Glenn T. Suddaby, United States Attorney for the Northern District of New York, Albany, N.Y., for Defendant–Appellee.

Before: CALABRESI and B.D. PARKER, Circuit Judges, and LYNCH, District Judge.[*]

PER CURIAM:

Appellant Ben Gary Triestman appeals from a March 10, 2004 order of the United States District Court for the Northern District of New York (Mordue, J.) partially dismissing—pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure—Triestman's complaint brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1) and 2671 *et seq.*, against the Federal Bureau of Prisons ("BOP") and the United States of America.[1] We conclude that Triestman's submissions, construed "liberally" and "interpret[ed] [so as] to raise the strongest arguments that they suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir.2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)), should be read to allege a theory of liability under the FTCA that the district court did not consider below. Because the district court has jurisdiction to consider this theory of liability, dismissal pursuant to Rule 12(b)(1) was inappropriate and, accordingly, we vacate and remand to the district court for further proceedings. In addition, we recommend that the district court appoint counsel to assist Triestman in further pursuing his claims.

---

[*] The Honorable Gerard E. Lynch, United States District Judge for the Southern District of New York, sitting by designation.

**1.** In an order filed on March 11, 2005, the district court, summarily adopting the report

## BACKGROUND

### I. *Statement of facts*

At all relevant times, the BOP had in place a program statement which provided that "[s]ignaling devices will be available for inmate use in all locked housing units that do not have *continuous staff coverage,*" and that "[i]nmates will not be left *unattended* in locked areas unless a signaling device is available to them for emergencies." BOP Program Statement No. 1600.06(3–4) (Feb. 25, 1992). The language of this program statement makes clear that prison officials must provide "continuous staff coverage" to, and may not leave "unattended," any inmate in a locked housing unit who does not have access to an emergency "signaling device." The precise terms "continuous staff coverage" and "unattended" are not defined in the program statement.

According to Triestman, while he was incarcerated at the Federal Correctional Institution at Ray Brook, New York ("FCI Ray Brook"), the BOP "neglect[ed] its duty of care" by failing to "adhere[ ] to its own regulations." Specifically, Triestman asserts that BOP employees—namely, the correctional staff at FCI Ray Brook—"did not provide either emergency signaling devices or continuous staffing of the areas where inmates were left unattended in locked areas," and, consequently, failed to comply with the BOP's program statement. It is undisputed that emergency signaling devices were not made available at FCI Ray Brook. Triestman contends that "continuous staff coverage" was not provided either, and that, as a result, he was left "unattended in . . . a locked area."

---

and recommendation of the magistrate judge, dismissed the remaining count in Triestman's complaint. Triestman did not appeal this dismissal.

In support of this contention, Triestman's submissions have focused on the staffing policy in place at FCI Ray Brook which, Triestman argues, was so inadequate that it "cannot be interpreted as continuous staff coverage." Under the staffing policy—according to Triestman's undisputed description—a single guard was assigned to an officer's station positioned in the center of numerous locked cells. Triestman explains that "[t]wice throughout the night, at regularly scheduled times, the guard is to make a cell check, and peeks into the window of each darkened cell for about 5 seconds. Between these cell checks, the inmates are entirely beyond earshot of the guard."

Triestman alleges that he was "preventably injured" as a result of FCI Ray Brook's failure to provide "continuous staff coverage." As a first-time, non-violent federal inmate, Triestman had originally been "designated a low security inmate and initially housed a[sic] low security facility at ... Otisville, [New York]." On January 12, 1995, due to overcrowding at Otisville, Triestman was transferred to FCI Ray Brook, a "medium/high security prison." [2] Upon arrival at FCI Ray Brook, Triestman was assigned to share a cell with an inmate, Gerald Harris, whom Triestman argues "was known to the [BOP] to be a violent criminal and sexual predator."

Triestman's appellate brief recounts the circumstances leading to his alleged injuries:

On the morning of January 26, 1995, at approximately 4:00 am [sic], after a night of escalating cajoling, advances and threats to convince Plaintiff to participate in homosexual intercourse and sodomy, Gerald Harris assaulted Plaintiff out of frustration and extortion, whereas [sic] Plaintiff refused to submit to Harris' overtures. In the assault, Harris dislocated Plaintiff's shoulder and later burned his hand with lit cigarettes.

Despite Plaintiff's shouts for help, no officer responded, and over this time Plaintiff was at the mercy of Harris, and in excruciating pain and fear. . . .

When the officer finally did come by, Plaintiff banged on the door begging to be let out[;] the officer queried as to why through the closed door[;] and Plaintiff yelled that he had been attacked.

The officer unlocked the door ... and later Plaintiff was escorted to the infirmary, where he was X-rayed, [and] his shoulder reduced without anesthetics.

Triestman says that, as a result of the attack, he "suffered acute excruciating pain, emotional distress, and continues to suffer chronic shoulder instability as well as continuing post traumatic stress." We must, at this stage of the proceedings, accept these factual assertions as true.

## II. *Procedural history*

In July 1996, Triestman, proceeding *pro se*, filed this FTCA suit.[3] In counts four

---

**2.** Triestman argued to the district court that he had been wrongly classified at a higher security level, "which led to him being transferred to [sic] medium/high security prison and thus being placed into a circumstance of unwarranted higher risk of violence and risk." The district court dismissed this "negligent transfer" claim, and Triestman does not appeal the district court's decision on this point.

**3.** In August 1995, Triestman also brought a *Bivens* suit, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against various BOP employees, based on similar factual allegations. The district court denied Triestman's motion to consolidate his *Bivens* and FTCA suits, however, and then dismissed the *Bivens* suit on April 11, 1997. For reasons unknown, Triestman did not ap-

and five of his complaint, Triestman asserted that the BOP failed to provide him signaling devices and proper staffing at FCI Ray Brook.[4] The district court, adopting the report and recommendation of United States Magistrate Judge David R. Homer, concluded, in relevant part, that counts four and five of Triestman's complaint were barred by the FTCA's "discretionary function" exception to the federal government's limited waiver of sovereign immunity. *See* 28 U.S.C. § 2680(a) (barring liability for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or [ ] employee ..., whether or not the discretion involved be abused"); *see also Fazi v. United States,* 935 F.2d 535, 538 (2d Cir.1991) (describing the two-pronged *Berkovitz–Gaubert* test for determining whether a government employee's conduct is protected under the discretionary exception function) (citing *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). Accordingly, the district court granted the government's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, on the ground of sovereign immunity.

## DISCUSSION

On appeal, Triestman challenges only the district court's dismissal for lack of jurisdiction of the allegations in counts four and five of his complaint—namely, that the BOP "did not provide either emergency signaling devices or continuous staffing of the areas where inmates were left unattended in locked areas," and that this failure is causally related to the injuries he suffered. Accordingly, we address only those counts.

I. *Standards of review and construction of pro se submissions*

Where, as here, a district court grants a defendant's Rule 12(b)(1) motion to dismiss, we review the district court's legal conclusions *de novo, Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005), and "must accept as true all material factual allegations in the complaint," *J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir.2004). *See also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

■ It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they *suggest.*" *Pabon,* 459 F.3d at 248 (emphasis added) (quoting *Burgos,* 14 F.3d at 790); *see also Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir.2006); *Forsyth v. Fed'n Employment & Guidance Serv.,* 409 F.3d 565, 569 (2d Cir.2005); *Sharpe v. Conole,* 386 F.3d 482, 484 (2d Cir.2004); *Wright v. Comm'r,* 381 F.3d 41, 44 (2d Cir.2004); *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003); *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003); *Weixel v. New York City Bd. of Educ.,* 287 F.3d 138, 145–46 (2d Cir.2002); *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000); *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

peal the dismissal of his *Bivens* suit, and that case was closed.

4. While these arguments were presented in counts four and five of Triestman's complaint, the magistrate judge relied, instead, on the numbering in the introductory section of Triestman's complaint, which listed these same arguments under numbers "2" and "3." We will, like the district court, refer to the counts addressing signaling devices and staffing as counts four and five.

■ This policy of liberally construing *pro se* submissions is driven by the understanding that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983); *see also Ruotolo v. I.R.S.,* 28 F.3d 6, 8 (2d Cir.1994) (recognizing that *pro se* litigants must be accorded "special solicitude"). *See generally* Jonathan D. Rosenbloom, *Exploring Methods to Improve Management and Fairness in* Pro Se *Cases: A Study of the* Pro Se *Docket in the Southern District of New York,* 30 FORDHAM URB. L.J. 305, 380 (2002) ("In this time of ever increasing legal costs and complexity of litigation, the *pro se* litigant is at an insurmountable disadvantage.").

III. *Analysis*

A. *Triestman's submissions, liberally construed*

■ Throughout this case, Triestman has manifestly argued that FCI Ray Brook's staffing policy was itself negligent. He has not, however, expressly articulated the separate argument that FCI Ray Brook employees were negligent in their enforcement of this policy. Nevertheless, under the circumstances of this case, the majority of this panel believes—in light of the "special solicitude" that is appropriately accorded to *pro se* litigants, *see Ruotolo,* 28 F.3d at 8—that Triestman's submissions can be read to assert the latter claim, i.e., that the officer on duty when the incident occurred failed to patrol or respond diligently to an emergency situation out of laziness or inattentiveness. Indeed, our court has, in a similar case, read such a "negligent guard" theory into a *pro se* complaint that was "susceptible to various readings." *See Coulthurst v. United States,* 214 F.3d 106, 109 (2d Cir.2000) (construing a *pro se* complaint as alleging negligence due to a BOP employee's failure to perform a diligent inspection out of laziness, hastiness, or inattentiveness, in addition to a claim that the BOP's inspection policy was itself negligent).

As in *Coulthurst,* the language in Triestman's submissions is "broad enough to cover" the negligent guard theory. *Coulthurst,* 214 F.3d at 110. Triestman's appellate brief asserts that his "injuries would have been prevented had [the BOP] adhered to its own regulations," and, broadly, that the BOP "is liable for *neglecting its duty of care.*" This language must be liberally construed. *See Dotson v. Griesa,* 398 F.3d 156, 159 (2d Cir.2005) (applying a "liberal reading" to plaintiff's *"pro se* appellate brief"); *Wright v. Comm'r,* 381 F.3d at 44 ("[W]e construe *pro se* appellate briefs and submissions liberally and interpret them to raise the strongest arguments they suggest.") (citation omitted); *Ortiz v. McBride,* 323 F.3d 191, 194 (2d Cir.2003) ("This court construes appellate briefs submitted by *pro se* litigants liberally and reads such submissions to raise the strongest arguments they suggest.") (citation omitted).

Similarly, Triestman's complaint uses broad language in its assertion that the BOP "[f]ailed to *institute and enforce* proper staffing and patrolling for each wing of the housing units during lockdown, and thus did not provide due diligence and emergency response [sic] when such emergency occurred...." The words "institute and enforce" quite plainly "suggest" two separate but complimentary arguments: (1) that FCI Ray Brook's staffing policy fell so far outside the range of appropriate judgment that it can no longer be viewed as an exercise of "discretion" in attempting to comply with the BOP's policy statement;

*and* (2) that FCI Ray Brook also "enforce[d]" that policy inadequately, due to the negligent actions of its employees.[5]

It is true that Triestman, during oral argument before this panel, did not articulate the "negligent guard" theory for himself. But that is of no moment, as it was the obligation of the district court below to interpret Triestman's complaint "to raise the strongest arguments that they suggest." *Pabon*, 459 F.3d at 248 (citation omitted).

## B. *Consideration of the negligent guard theory*

 The negligent guard theory is a theory of liability under the FTCA over which the district court clearly has subject matter jurisdiction. *See Coulthurst*, 214 F.3d at 109 (holding that a negligent guard theory would not fall under the discretionary function exception because "[s]uch negligent acts neither involve an element of judgment or choice within the meaning of *Gaubert* nor are grounded in considerations of governmental policy"). Therefore, Triestman's complaint should not have been dismissed pursuant to Rule 12(b)(1). *See Aurecchione*, 426 F.3d at 638 (holding that a plaintiff's complaint survived Rule 12(b)(1) dismissal where the plaintiff "made a colorable pleading of subject matter jurisdiction upon which the district court could have relied to adjudicate the complaint").

While expressing no ultimate view of the merits of the negligent guard theory in this case, or even of its capacity to withstand summary judgment, we believe the claim is not so meritless that it can now be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Aurecchione*, 426 F.3d at 638–39 (noting that, at the Rule 12(b)(1) stage of litigation, "it is not necessary for the district court to determine which party shall ultimately prevail") (citing *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683 ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim[ ]. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.")).

The complexity of the negligent guard theory in this case is such, moreover, that we believe a claim of this sort is best made with the assistance of counsel. Hence, we recommend that the district court, on remand, appoint counsel to aid Triestman in pursuing this claim. *Cf. Mosseri v. Fed. Deposit Ins. Corp.*, 104 F.3d 356 (2d. Cir. 1996) (unpublished) (noting that "full briefing before the district court is … desirable" and therefore "encourag[ing] the district court to … appoint counsel" for the *pro se* litigant).

Furthermore, we decline at this time to rule on the justiciability or merits of the theory of liability that Triestman has explicitly presented to us, i.e., that FCI Ray Brook's staffing policy was itself negligent. We do so decline because, if the negligent guard theory can be made on remand, the answer that the defendants might give to such a claim—insofar as it touches on the clarity of the rules with which they were complying—may affect the propriety of a dismissal, pursuant to the discretionary function exception, of Triestman's "negligent policy" claim. Thus, in view of the

---

5. Triestman's complaint also alleges that "[a] single staff member cannot be said to be staffing both wings when he cannot hear or be alerted to an emergency in the opposing wing." This language is, of course, consistent with the first argument, i.e., that FCI Ray Brook's staffing policy was hopelessly inadequate. However, Triestman's claim about the inadequacy of the staffing policy is in no way *inconsistent* with the second argument about the negligence of BOP employees, which his complaint also fairly suggests.

possibly inextricable relationship between the negligent guard and negligent policy theories of liability, we believe it would be inappropriate to rule on these theories in piecemeal fashion.

\* \* \*

Our learned dissenting colleague does not believe that the petitioner's complaint can be read to assert the negligent guard theory of liability. In the end, that has to be a matter of judgment on which reasonable people may differ. There are many cases in which we have said that a *pro se* litigant is entitled to "special solicitude," *Ruotolo,* 28 F.3d at 8; that a *pro se* litigant's submissions must be construed "liberally," *Brownell,* 446 F.3d at 310; and that such submissions must be read to raise the strongest arguments that they "suggest," *Pabon,* 459 F.3d at 248. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations, *Phillips v. Girdich,* 408 F.3d 124, 127 (2d Cir.2005) (citation omitted), or arguments that the submissions themselves do not "suggest," *Pabon,* 459 F.3d at 248; that we should not "excuse frivolous or vexatious filings by *pro se* litigants," *Iwachiw v. State Dep't of Motor Vehicles,* 396 F.3d 525, 529 n. 1 (2d Cir.2005); and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law," *Traguth,* 710 F.2d at 95 (citation omitted).[6] In all candor, the rubric used in all these cases seems more likely to reflect the conclusion already reached by the court than to give much guidance in deciding which case falls on which side of the

line. Under the circumstances, we must all do our best to gauge what is appropriate.

### CONCLUSION

We VACATE the district court's dismissal of Appellant's counts four and five, and REMAND to the district court for further proceedings consistent with this decision. Additionally, we recommend that the district court appoint counsel to aid Appellant in further pursuing his claims on remand. In identifying one line of argument that is clearly not barred by the discretionary function exception—i.e., the negligent guard theory—we express no opinion as to its ultimate merits. Nor, in doing so, do we prevent counsel from pursuing other arguments—for example, whether FCI Ray Brook's staffing policy falls outside the range of appropriate judgment, such that it can no longer be viewed as an exercise of "discretion" under the discretionary function exception—as counsel may deem appropriate. In leaving such matters to counsel's judgment we, of course, do not suggest that any such arguments will be meritorious.

Judge LYNCH dissents in a separate opinion.

LYNCH, District Judge, dissenting:

In January 1995, Ben Gary Triestman was brutally assaulted by a cellmate in the Federal Correctional Institution at Ray Brook, New York. On August 16, 1995, he filed a lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999,

---

**6.** *Cf. Donald v. Cook County Sheriff's Dep't,* 95 F.3d 548, 555 (7th Cir.1996) (cautioning that while the court "is not to become an advocate" for a *pro se* litigant, it must "take appropriate measures to permit the adjudication of *pro se* claims on the merits"). *See generally*

Ellen E. Sward, *Values, Ideology, and the Evolution of the Adversary System,* 64 IND. L.J. 301, 321 n. 96 (1989) ("A judge can be impartial but very active in developing the case.... Impartiality is a requirement for fair adjudication, but judicial passivity is not.").

29 L.Ed.2d 619 (1971), against several prison officials, alleging that their actions and negligence had proximately caused the injuries inflicted on him in the assault. He filed the instant case on July 10, 1996, alleging that the Federal Bureau of Prisons and the United States were also responsible for his injuries. He advanced a number of theories in these lawsuits, including that the Bureau and individual prison officials improperly transferred him to Ray Brook in the first place based on an inaccurate assessment of his security level, that they acted negligently in double-celling him with a known violent sexual predator, and, most relevant to this appeal, that the Bureau failed to comply with a regulation requiring that prisoners not be left in locked housing units without either a signaling device that would permit calling for help in the event of emergency, or "continuous staff coverage." (*See* App. at 13–18.) The district court denied Triestman's motion to consolidate the two lawsuits and, at various stages of the litigation, rejected all of Triestman's theories of liability in each case.[1]

After receiving final judgments from the district court, Triestman abandoned the *Bivens* action and most of the claims against the Bureau, choosing to appeal instead only the dismissal of his claim against the Bureau regarding the alleged lack of "continuous staff coverage." According to Triestman, the district court erred when it dismissed this claim under the "discretionary function" exception to the Federal Tort Claims Act (FTCA). See 28 U.S.C. § 2680(a). The argument is straightforward: Triestman contends that because the placement of a single guard on duty for an entire housing unit cannot be interpreted as providing "continuous staff coverage," the Bureau's assignment of only one guard to his unit violated mandatory regulations requiring either "continuous staff coverage" or an emergency signaling device. (Appellant's Br. at 5–8.) The discretionary function exception, Triestman argues, does not permit the Bureau to redefine the plain meaning of "continuous staff coverage" to include "any de minimus level prison staff care." (Appellant's Reply Br. at 5.) To hold otherwise, he asserts, would render the FTCA ineffective, by allowing the government to cast any unreasonable interpretation of a mandatory regulation as an exercise of its "discretion" and therefore immune from judicial scrutiny. (*See id.* at 5–6.)

Rather than address the merits of this argument, the Court today determines sua sponte that a theory of negligence on the part of the specific guard on duty (which in turn could be attributed to the United States on a theory of respondeat superior) lurks unexpressed in Triestman's FTCA complaint, and remands the case to the district court to explore liability on this basis. The Court thus extends this ten-year old litigation by requiring the district court essentially to start at the beginning with an entirely new theory never asserted by Triestman, while at the same time declining to decide the one issue that the parties have clearly presented for decision.

One is loathe to dissent from a ruling that appears simply to keep open an option for a pro se plaintiff who was unquestionably injured, by suggesting an avenue of relief that conceivably could be successfully pursued by a diligent attorney. After all, it is common ground that submissions of pro se litigants must be read liberally to include "the strongest arguments they suggest." *Wright v. C.I.R.*, 381 F.3d 41, 44 (2d Cir.2004). As the Court indicates, reasonable people can disagree over

---

1. These cases represent only two of over a dozen cases filed by Triestman in the District Court for the Northern District of New York between 1992 and 1996.

whether a given theory is encompassed within a complaint. It is tempting simply to go along with an apparently charitable impulse to make sure every theory has been explored.

Here, however, even under a liberal interpretation, I do not believe Triestman's complaint can fairly be read to allege that his injuries resulted from a particular guard's negligence, laziness, or inattentiveness. On the contrary, Triestman clearly alleges that the Bureau's practice of placing a single guard on duty made it impossible for any guard even to hear Triestman's cries for help, and therefore made it impossible for any guard to prevent his injuries. The complaint alleges, for example, that the housing unit contained "two widely separated wings," and that the single officer assigned to patrol them "*could not hear* or be alerted to an emergency" in one wing while he was in the other. (App. at 7 (emphasis added).) "A single staff member," the complaint continues, "cannot be said to be staffing both wings when he *cannot hear* or be alerted to an emergency in the opposing wing." (*Id.* (emphasis added).) Though the complaint alleges injuries caused by "substandard and insufficient patrolling and monitoring of the inmate rooms," it clearly explains that these deficiencies existed "due to [the] lack of staffing," and cannot fairly be read to attribute the "insufficient patrolling" to the negligence of particular guards. (*Id.*)

Triestman's brief on appeal is also inconsistent with the "negligent guard" theory. Thus, even if the complaint could be read to include a claim that a particular guard was inattentive or lazy, this Court should deem the claim abandoned on appeal. *See*

*Cruz v. Gomez*, 202 F.3d 593, 596 n. 3 (2d Cir.2003) ("When a litigant—including a pro se litigant—raises an issue before the district court but does not raise it on appeal, the issue is abandoned." (citing *Lo-Sacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir.1995))). Nowhere in the brief does Triestman claim that the guard on duty on the night of the assault acted negligently in any manner. The brief asserts instead that when an officer was stationed in his "assigned" position, "it was *impossible* for [him] to hear cries for help from any of the cells." (Appellant's Br. at 4 (emphasis added).) Though the assigned guard was required to make two "cell checks" at regularly scheduled times during the night, the brief explains, "the inmates [were] entirely beyond earshot of the guard" at all other times. (*Id.; see also id.* at 7 ("[B]etween [cell checks,] . . . a guard cannot . . . hear an inmate's calls or cries for help.").) [2] These factual allegations, which the majority largely ignores, are inconsistent with any claim that a guard's negligence caused plaintiff's injuries. Contrary to the majority's conclusion that "Triestman's claim about the inadequacy of the staffing policy is in no way inconsistent with the second argument about the negligence of [Bureau] employees," Majority Opinion at 9 n. 5 (emphasis omitted), Triestman's complaint and brief make clear that, because the Bureau placed only one guard on duty, even a diligent guard would have been physically unable to hear Triestman's cries for help. If a guard's diligence would not have prevented Triestman's injuries, the lack of diligence on the guard's part could not have caused them.[3]

---

**2.** According to Triestman, the assault occurred between cell checks (see App. at 20), and thus occurred at a time when "it was impossible for any . . . guard" in his "as-

signed" position "to hear cries for help." (Appellant's Br. at 4.)

**3.** The majority notes that this Court "has, in a similar case, read such a 'negligent guard'

It is telling, moreover, that Triestman has not hesitated to allege negligence or recklessness on the part of particular prison officials when he believes they are responsible for his injuries. In the unappealed *Bivens* action—which related to the same assault at issue in this case—Triestman alleged that Roger Fink, the prison's Safety Manager, as well as some of Fink's employees, had acted with "deliberate indifference" in "keeping the facility without necessary safety devices" that could have prevented Triestman's injuries. Complaint at 1d, *Triestman v. Sizer* (N.D.N.Y. 1995) (95 Civ. 1140). Triestman also alleged that two of the prison wardens were "responsible for keeping Ray Brook FCI below federally mandated conditions, resulting in Plaintiff's injury." *Id.* The *Bivens* complaint, however, did not allege laziness, inattentiveness, or negligence on the part of any guard on duty the night Triestman was attacked. This further confirms what the complaint and appellate brief in the instant case already make clear—that Triestman has never intended to advance the theory invented by the Court today.

My most serious objection to the majority's disposition of the case, however, has less to do with the Court's willingness to read the pro se complaint to contain a theory not presented—though I disagree with its reading—than with its unwillingness to decide the issue that plainly *is* presented. The district court in this case considered and ruled on what the majority refers to as the "negligent policy" claim. Triestman then appealed, presenting this Court with a very clear argument as to why the district court's application of the discretionary function exception to bar the "negligent policy" claim was in error. The issue having been decided by the district court and fully briefed by the parties on appeal, I believe that we have a responsibility to rule on it. After all, if the "negligent policy" claim has merit, and the district court's decision should be reversed on that basis, then the plaintiff's case goes forward expeditiously. If it does not, then the district court need waste no further time on that theory.[4]

Under the majority's chosen course, however, the case is remanded to the district court to revisit, possibly with the assistance of counsel, a claim that the district court has already found without merit. If the district court was right, this will be a waste of everyone's time; if the district court was wrong, the error will have

theory into a *pro se* complaint that was 'susceptible to various readings.' " Majority Opinion at 475 (quoting *Coulthurst v. United States,* 214 F.3d 106, 109 (2d Cir.2000)). In *Coulthurst,* however, unlike in this case, the plaintiff clearly presented a "negligent guard" theory on appeal. It is one thing to read a complaint liberally to avoid finding that a plaintiff has forfeited a claim he wishes to make before this Court. It is quite another to read a complaint to contain a claim the plaintiff does not assert even on appeal. While *Coulthurst* may provide further support for the undisputed proposition that pro se submissions should be construed liberally to raise the strongest arguments they suggest, the case provides no support for the majority's refusal to take into account the multiple, unambiguous factual allegations in Triestman's submissions that undermine the "negligent guard" theory.

**4.** Though I believe Triestman presented his arguments effectively, I would have not the slightest objection to appointing counsel in this Court if the majority felt that doing so could elucidate the issues better for us and result in fairer treatment for Triestman. This is precisely what the Court did in *Coulthurst,* which as the majority notes similarly involved allegations of negligence by an injured prisoner. See 214 F.3d at 108. The *Coulthurst* panel specifically instructed appointed counsel to explore the viability of the negligent guard theory. *See Coulthurst v. United States,* 98–2860 (2d Cir. July 22, 1999) (order appointing counsel).

to be corrected by this Court at some future time, and correction of the error will have been long delayed, to the benefit of no one—and certainly not of Triestman. Moreover, since no one until now has ever considered the "negligent guard" theory that the majority finds hidden in the complaint, the actual behavior of the guard in question has not been explored in discovery. The proceedings on remand, therefore, may well be extensive and time-consuming. One may hope that it will not take another ten years to bring the case again to a final judgment, but there is no small likelihood of a lengthy and inconclusive battle over an invented issue.

Rather than the "special solicitude" represented by the majority's disposition, see Majority Opinion at 475 (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir.1994)), a reasonable pro se litigant might well prefer to be accorded the ordinary respect of this Court's deciding the issue he has earnestly put before us. If he is correct, the case can proceed on the theory that he has chosen and pursued for ten years. If he is not, then that branch of the litigation will be terminated, and Triestman will be spared the time and expense of re-litigating a losing argument.

Because I believe the Court has improperly ducked the one issue properly presented to it, and has unnecessarily required the district court to extend a decade-old litigation by addressing issues not fairly suggested by the plaintiff's complaint or appellate brief, I respectfully dissent.