12-1374-pr
Dorsey v. Hogan

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED
BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1.
WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY
OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated Term of the United States Court of Appeals for the Second
Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square,
in the City of New York, on the 14th day of February, two thousand thirteen.

Present:     SUSAN L. CARNEY,
             CHRISTOPHER F. DRONEY,
                    *Circuit Judges,*
             PAUL G. GARDEPHE,
                    *District Judge.*[*]

---

THOMAS DORSEY,

       *Plaintiff–Appellant,*

              v.                                    No. 12-1374-pr

DR. MICHAEL HOGAN, PH.D., COMMISSIONER OF
THE OFFICE OF MENTAL HEALTH; DR. TERRI
MAXYMILLIAN, DIRECTOR, SEX OFFENDER
TREATMENT PROGRAM, CENTRAL NEW YORK
PSYCHIATRIC CENTER,

       *Defendants–Appellees.*

---

[*] The Honorable Paul G. Gardephe, United States District Judge for the Southern District of New York, sitting by designation.

FOR APPELLANT:        Thomas Dorsey, *pro se*, Rocky Mount, North Carolina.

FOR APPELLEES:        Eric. T. Schneiderman (Barbara D. Underwood, Andrea Oser, and Andrew B. Ayers, *on the brief*), Attorney General of the State of New York, Albany, New York.

Thomas Dorsey appeals from the judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*) dismissing his § 1983 complaint. Although we affirm the district court's dismissal of plaintiff's claims for injunctive relief and so much of plaintiff's complaint as seeks damages in relation to defendants' requirement that plaintiff participate in sex offender treatment, we reverse the district court's dismissal of the portion of the complaint that seeks damages for denial of access to the courts, and we remand to the district court with instructions to grant plaintiff leave to file a second amended complaint alleging a violation of the preliminary injunction governing the enforcement of N.Y. Mental Hygiene Law § 10.06(k), and for further proceedings on plaintiff's access-to-courts claim. **UPON DUE CONSIDERATION, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment dismissing plaintiff's complaint is **AFFIRMED** in part and **REVERSED** in part, and the case is **REMANDED** for further proceedings consistent with this opinion.

Thomas Dorsey, proceeding *pro se*, appeals from the district court's dismissal of his 42 U.S.C. § 1983 complaint for damages and injunctive relief. In his amended complaint, Dorsey – who had been civilly confined from May 2009 through some time in February 2011, under New York law, as a possible sex offender – made primarily two allegations. First, he alleged that his due process rights were

2

violated when he was required to participate in sex offender treatment at the Central New York Psychiatric Center ("CNYPC"). Second, he claimed that while confined, he was unlawfully denied access to a law library and, by extension, to the courts. Adopting the Magistrate Judge's Report and Recommendation, the district court dismissed Dorsey's claims for monetary damages for failure to state a claim, and abstained, pursuant to Younger v. Harris, 401 U.S. 37 (1971), from exercising jurisdiction over Dorsey's claims for injunctive relief. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

1.　　As enacted in 2007, New York's Sex Offender Management and Treatment Act, codified at N.Y. Mental Hygiene Law §§ 10.01, *et seq.* (the "Act"), authorizes the indefinite civil confinement or "strict and intensive" outpatient supervision and treatment of "sex offender[s] requiring civil management," defined as "detained sex offender[s] who suffer[ ] from a mental abnormality." N.Y. Mental Hygiene Law §§ 10.03(q), 10.07(f). The category of "detained sex offenders" includes persons who have been convicted of sex offenses, as well as persons who have been convicted of other "designated felonies" – committed before the Act's effective date – that were "sexually motivated." Id. § 10.03(g).

Under the Act, shortly before a "detained sex offender" is scheduled to complete the sentence of incarceration imposed for his or her underlying offense, a "case review team" informs the state Attorney General as to whether it finds the person is a "sex offender requiring civil management." If the case review team

3

makes this finding, the Attorney General may then file a "sex offender civil management petition." Id. § 10.06(a). Within thirty days of the petition's filing, a state court holds a hearing to determine whether there is probable cause to believe that the person is a "detained sex offender who suffers from a mental abnormality." Id. §§ 10.03(q), 10.06(k). If the court finds such probable cause, the Act provides that, after the sentence of incarceration is completed, the person "shall" be committed to a "secure treatment facility" while awaiting a trial to determine whether the person is a "detained sex offender who suffers from a mental abnormality." Id. §§ 10.03(q), 10.06(k).

At trial, the Attorney General must prove by clear and convincing evidence that the person is a "detained sex offender who suffers from a mental abnormality." Id. § 10.07(d). If the Attorney General is unable to meet this burden, the person must be released unless another provision of law authorizes continued detention. Id. § 10.07(e). If, however, the Attorney General carries his burden of proof, the court must determine "whether the [person] is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision." Id. § 10.07(f). If the person is found to have a mental abnormality involving "such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the respondent is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility," then the person must be civilly committed "until such time as he or she no longer requires confinement." Id. Otherwise, the person is "subject to a regimen of strict and intensive supervision and treatment." Id.; see also id. § 10.11.

2.     In 2006, Dorsey was convicted of attempted assault and sentenced to three years' imprisonment. His claims in the appeal before us arise from the terms of his detention at CNYPC, pursuant to the Act, beginning upon his release from prison on May 11, 2009, and continuing through February 2011. His civil detention appears to have begun after the State conducted a probable cause hearing as contemplated by the Act, but before a jury trial. Plaintiff states in his brief that, at the jury trial, "his [attempted assault] conviction was found not to be a sexually motivated crime," and he was therefore released. Appellant's Br. at 14. The record is otherwise devoid of evidence regarding the bases for his post-sentence detention and release.

Because he was released in February 2011, Dorsey's claims for injunctive relief relating to the conditions of his confinement at CNYPC are moot. See, e.g., Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam). Dorsey's claims for damages, however, are properly before us for review on appeal.

3.     This Court "review[s] de novo a district court's dismissal of a complaint pursuant to [Federal Rule of Civil Procedure] 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). We construe the submissions of a *pro se* litigant liberally and

5

"interpret[ ] [them] to raise the strongest arguments that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

Plaintiff's amended complaint alleges that defendants deprived him of procedural and substantive due process by requiring him, while at CPNYC, to participate in sex offender treatment based solely on a finding of probable cause to believe that he was a sex offender with a "mental abnormality." Defendants argue that plaintiff has failed to state a claim on which relief may be granted, or, in the alternative, that they are entitled to qualified immunity from suit on these claims.

To determine whether an official is entitled to qualified immunity, the court must assess (a) whether the plaintiff has alleged a violation of a statutory or constitutional right, and (b) whether that right was "clearly established" at the time of the alleged violation. Pearson v. Callahan, 555 U.S. 223, 232 (2009).

4.      Defendants are entitled to qualified immunity on plaintiff's claim that his due process rights were violated when the State required him, an individual detained under the Act after a probable cause hearing, to participate in a sex offender treatment program.[1] This Court is not aware of any controlling authority holding that, as a condition of an otherwise valid confinement, a person must be found to be a sex offender by a standard stricter than probable cause before the person may be required to participate in a sex offender treatment program. Thus,

_____

[1] Dorsey appears to concede in his complaint that he exercised his right to opt-out of participation in sex offender treatment. He alleges, however, that he suffered negative consequences for his refusal to participate.

6

plaintiff has not alleged facts sufficient to sustain his claim that defendants violated a "clearly established" constitutional or statutory right in relation to the sex offender treatment itself, and we therefore affirm the dismissal of plaintiff's damages claim in this regard.

5. We note, however, that the record suggests that Dorsey's objection to the treatment program may have a more compelling basis than is explicit in his *pro se* complaint: he may have been confined at CPNYC in violation of a preliminary injunction entered by then-District Judge Lynch. In December 2007, two years before Dorsey was first confined under the Act, Judge Lynch issued an order barring New York from enforcing N.Y. Mental Hygiene Law § 10.06(k), the provision under which Dorsey was detained. As discussed above, § 10.06(k) permits detention of certain sex offenders after a court's finding of probable cause and before the State's presentation at a jury trial. Granting a motion for preliminary injunction, Judge Lynch found that the statute was likely unconstitutional in permitting such interim confinement absent a "specific, individualized finding of probable cause to believe that [the] person is sufficiently dangerous to require confinement, and that lesser conditions of supervision will not suffice to protect the public during [the] pendency of the proceedings." Mental Hygiene Legal Serv. v. Spitzer, No. 07-Civ-2935, 2007 WL 4115936, at *15 (S.D.N.Y. Nov. 16, 2007).

Entry of the preliminary injunction was affirmed on appeal by a panel of this Court in March 2009, Mental Hygiene Legal Serv. v. Paterson, No. 07-5548-cv, 2009

7

WL 579445 (2d Cir. Mar. 4, 2009) (summary order), and the injunction appears to

have remained in effect throughout plaintiff's confinement at CPNYC.[2]

6.      In their briefing on appeal, defendants describe Dorsey's confinement

as resting on a State Supreme Court judge's "administrative finding" of probable

cause to believe that plaintiff "suffered from a mental abnormality that predisposed

him to engage in repeated sex offenses, and had serious difficulty controlling his

behavior." Appellees' Br. 7. (The record before us does not contain the State

Supreme Court's language verbatim.) Defendants do not assert, however, that the

record demonstrates that the State court also made a finding – as required by the

preliminary injunction – that plaintiff was so dangerous that lesser conditions of

confinement would not suffice to protect the public.

Defendants recognize the existence of the preliminary injunction but contend

that the preliminary injunction is irrelevant here because it did not concern the

precise issue raised by Dorsey. Appellees' Br. at 18 & n.7. To be sure, Dorsey's

complaint took issue primarily with the requirement that he participate in a sex

offender treatment program while confined, but construing his *pro* se submission

liberally, as we must, we think the complaint can fairly be read to present a more

---

[2] Indeed, a permanent injunction to the same effect as Judge Lynch's preliminary injunction was entered by the district court in March 2011, the month after plaintiff's release. See Mental Hygiene Legal Serv. v. Cuomo, 785 F. Supp. 2d 205, 229 (S.D.N.Y. 2011) (Batts, *J.*). In 2012, our Court vacated the permanent injunction and remanded the proceedings to the district court with directions to assess Mental Hygiene Legal Service's standing in light of our recent opinion in Disability Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living, Inc., 675 F.3d 149 (2d Cir. 2012). Mental Hygiene Legal Serv. v. Schneiderman, 472 Fed. App'x 45 (2d Cir. June 20, 2012).

general challenge to his confinement as a sex offender. See Am. Compl. ¶ 24. Furthermore, a condition of confinement, such as participation in a treatment program, cannot be legitimate if the confinement itself contravenes the law. The State's potential violation of the injunction thus lies close enough to the heart of Dorsey's main complaint to suggest that, with the assistance of counsel, he might present his confinement claim in such a way as to survive a motion to dismiss.

We therefore vacate the judgment for defendants and remand to the district court with instructions to grant plaintiff leave to file a second amended complaint explicitly alleging a violation of the preliminary injunction.[3] The district court is also directed to appoint pro bono counsel for Dorsey on remand.

7. The Magistrate Judge found that plaintiff had failed to allege "actual injury," as required to state a claim for a denial of access to the courts. Because we conclude, as discussed above, that plaintiff may have been confined in violation of the preliminary injunction, and that he may have been unable to vindicate his claim while incarcerated by virtue of his lack of access to a law library or counsel, we also conclude that plaintiff has plausibly alleged that his efforts to pursue relief in state court were improperly hindered. We therefore reverse the district court's dismissal of plaintiff's access-to-courts claim and remand for further proceedings.

_____

[3] Although the question is not fully addressed in their brief on appeal, defendants do not appear to suggest that they would be entitled to qualified immunity had plaintiff presented his claim as one for a violation of the preliminary injunction. There is at least a plausible argument that confining a person in violation of a preliminary injunction constitutes a "clearly established" violation of the detainee's statutory or constitutional rights such as might overcome a defense of qualified immunity. Defendants' individual roles in effecting Dorsey's detention likely would bear heavily on any related immunity claim.

9

For the foregoing reasons, we hereby AFFIRM so much of the judgment as dismisses plaintiff's claims for injunctive relief and plaintiff's claim seeking damages for mandatory participation in sex offender treatment, REVERSE the judgment of dismissal of plaintiff's access-to-courts-claim, and REMAND to the district court for further proceedings consistent with this opinion.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk