Debbie L. PARRIS, Plaintiff,

v.

ACME BUS CORP., Defendant.

No. 08–cv–5123 (JFB)(GRB).

United States District Court, E.D. New York.

July 9, 2013.

Debbie L. Parris, pro se.

Alan B. Pearl of Portnoy, Messinger, Pearl & Associates, PC, Syosset, NY, John K. Diviney, Rivkin Radler LLP, Uniondale, NY, and Gina Ianne Grath, Alan B. Pearl & Associates, Syosset, NY, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Debbie L. Parris ("plaintiff" or "Parris") brought this action against Acme Bus Corp. ("defendant"), alleging race discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Defendant subsequently filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

On August 31, 2012, Magistrate Judge Brown issued a Report and Recommendation ("R & R") recommending that defendant's motion for summary judgment be

granted in its entirety and that plaintiff's complaint be dismissed. Plaintiff subsequently submitted her objections to the R & R's conclusion.

For the reasons that follow, having considered the parties' submissions, as well as having reviewed the entire R & R *de novo* (with plaintiff's objections), the Court adopts Magistrate Judge Brown's thorough and well-reasoned R & R in its entirety.

### I. PROCEDURAL HISTORY

Plaintiff filed her complaint on December 19, 2008. Defendant answered on April 17, 2009. On December 30, 2011, defendant filed a motion for summary judgment. Following several requests for extensions of time, plaintiff filed two letters with the Clerk's Office on March 12, 2012, one dated January 31, 2007, and the other, March 9, 2012. On March 30, 2012, defendant filed its reply in further support of its motion. By Order dated April 5, 2012, the Court referred the motion for summary judgment to Magistrate Judge Brown for a Report and Recommendation.

On August 31, 2012, Magistrate Judge Brown issued an R & R, recommending that defendant's motion for summary judgment be granted in its entirety. On September 21, 2012, plaintiff submitted a letter requesting an extension of time in which to file her objections to Magistrate Judge Brown's R & R on the grounds that she needed to retain an attorney. By Order dated September 25, 2012, this Court deferred its ruling on the R & R, ordering instead that the case be stayed—and administratively closed during the stay—until plaintiff submitted a written request, upon which it would be reopened. The Order further required plaintiff to submit a letter, no later than October 31, 2012, advising the Court as to whether she had retained an attorney, and if not, the reasons for the continued delay.

Plaintiff failed to submit a letter by the October 31, 2012 deadline. Accordingly, on November 27, 2012, the Court issued an Order stating that, no later than December 12, 2012, plaintiff was to provide the Court with a letter regarding the status of the case, and also, the reasons as to why she had failed to submit any correspondence regarding the retainer of an attorney. Plaintiff submitted a letter on December 17, 2012, stating that she had not been able to retain counsel due to her unemployment status and the cost of counsel.

On January 4, 2013, this Court held a telephone conference with the parties, at which time plaintiff was instructed to file her objections with the Court no later than February 18, 2013, with defendant's opposition papers due on March 11, 2013. Plaintiff failed to submit her objection by the deadline.

Accordingly, on March 11, 2013, defendant submitted a letter requesting that the Court adopt Magistrate Judge Brown's R & R in its entirety. On April 10, 2013, plaintiff submitted a letter apologizing for her failure to have filed her opposition papers according to the Court's Order. The Court subsequently ordered plaintiff to submit her objection papers by hand to the Clerk's Office no later than May 3, 2013. Plaintiff did so on May 8, 2013. On May 31, 2013, defendant submitted its opposition to plaintiff's objections. The Court has fully considered the parties' submissions *de novo*.

### II. STANDARD OF REVIEW

A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood*, 679 F.Supp. 372, 374 (S.D.N.Y. 1988). As to those portions of a report to

which no "specific written objection" is made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. *Santana v. United States,* 476 F.Supp.2d 300, 302 (S.D.N.Y. 2007); *Greene v. WCI Holdings Corp.,* 956 F.Supp. 509, 513 (S.D.N.Y.1997). When "a party submits a timely objection to a report and recommendation, the district judge will review the parts of the report and recommendation to which the party objected under a *de novo* standard of review." *Jeffries v. Verizon,* 10–CV–2686 (JFB) (AKT), 2012 WL 4344188, at *1 (E.D.N.Y. Sept. 21, 2012); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed.R.Civ.P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

### III. PLAINTIFF'S OBJECTIONS

Plaintiff objects to the R & R regarding its recommendation that the Court grant defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because (1) plaintiff did not establish a *prima facie* case that defendant discriminated against her on account of her race, and (2) plaintiff failed to provide evidence rebutting defendant's legitimate, non-pretextual reason for terminating plaintiff.

Plaintiff submits various forms of evidence in objection to Magistrate Judge Brown's findings. (*See generally* Pl.'s Objections.) However, this evidence does not support an inference of discrimination, nor does it establish a genuine issue as to any material fact. Stated differently, plaintiff does not point to any evidence which undermines the factual or legal conclusions reached by Magistrate Judge Brown in his R & R. Instead, plaintiff calls the Court's attention to a host of exhibits that do not serve to further her position in this case. As Magistrate Judge Brown correctly concluded after a thorough review of the record, plaintiff has set forth no evidence that her termination from defendant's employ was motivated by her race. Rather, the uncontroverted evidence shows that plaintiff was terminated because of her unexcused, eleven-day absence from work. In short, given the uncontroverted facts in the record, no rational jury could find that defendant held a discriminatory motive when it terminated plaintiff following her near two week absence from work.

The same holds true for any possible additional claims that plaintiff asserts in her pleadings, including a hostile work environment claim or retaliation claim. Regarding each potential claim, as to the former, plaintiff fails to direct the Court to any evidence indicating (nor does the uncontroverted evidence in the record reflect) that defendant's work environment was hostile, or that plaintiff was subjected to a hostile environment on account of her race. As to the latter, the only complaints for which plaintiff claims she suffered retaliation concerned co-workers' alleged discrimination against third-party passengers, and the law in this Circuit is clear that such a complaint (assuming *arguendo* that plaintiff offered evidence supporting this) is not cognizable under Title VII. *See, e.g., Wimmer v. Suffolk Cnty. Police Dep't,* 176 F.3d 125, 135 (2d Cir.1999) (stating that a "complaint of retaliation for opposing discrimination by co-employees against non-employees is" not cognizable under Title VII because it is not "directed at an unlaw-

ful *employment practice* of [the] employer").

The Court has conducted a *de novo* the R & R in its entirety, and it adopts the R & R in all respects.

### IV. CONCLUSION

Having conducted a *de novo* review of the R & R, and having considered the parties' additional submissions, the Court adopts the R & R, recommending that defendant's motion for summary judgment be granted, in its entirety. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

### *REPORT AND RECOMMENDATION*

GARY R. BROWN, United States Magistrate Judge:

In this action, Debbie L. Parris ("plaintiff") sues her former employer, Acme Bus Corporation ("Acme" or "defendant") for discrimination under Title VII. Acme has moved for summary judgment, which motion has been referred to the undersigned by District Judge Joseph Bianco for a Report and Recommendation. *See* Order Referring Mot., Apr. 5, 2012. Because plaintiff has failed, notwithstanding the completion of fulsome discovery, to adduce any evidence of actionable discrimination, I recommend, for the reasons set forth herein, that defendant's motion for summary judgment be GRANTED in its entirety and the complaint dismissed.

### FACTS

The plaintiff here represents herself *pro se* in defending this motion for summary judgment. Such a posture demands that the Court liberally construe plaintiff's submissions to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal citations omitted). The Court accordingly draws heavily upon plaintiff's version of events, set forth in the main here in plaintiff's response to defendant's motion for summary judgment. *See* Docket Entry ("DE") [60] ("Plaintiff's Response"). Where necessary for corroboration and clarity, facts are drawn from plaintiff's deposition transcript and defendant's Rule 56.1 Statement.[1]

Plaintiff is an African–American woman. She began employment at Acme on April 16, 2005. Mot. for Summ. J. Ex. 7 ¶ 7, DE [55] ("Rule 56.1 Statement"); Pl.'s Depo. Tr. 63:3–11. Plaintiff was hired as a matron, or assistant to the bus driver. Rule 56.1 Statement ¶ 7; Pl.'s Depo. Tr. 60:11–18. Plaintiff worked a regular shift with a bus driver named John Massey ("Mr. Massey") throughout her tenure with Acme. Rule 56.1 Statement ¶ 7; Pl.'s Depo. Tr. 62:5–24. Plaintiff accompanied disabled passengers as Mr. Massey (and, on at least one occasion, another driver) picked them

---

1. As to defendant's Rule 56.1 Statement, the Court notes for the record that it refers liberally to the Declaration of Barbara Lawrence. *See* Rule 56.1 Statement ¶¶ 4–23. Ms. Lawrence avers with perfect recollection to the incidents leading up to and surrounding the conclusion of plaintiff's tenure at Acme. Notably, when plaintiff questioned Ms. Lawrence concerning these same events eighteen months earlier, Ms. Lawrence responded, repeatedly and almost reflexively at times, "I don't recall." *See* Lawrence Depo. Tr. 7–10, 17–18, 20, 22–24, 29–34. Of course, Ms. Lawrence's credibility or lack thereof is not at issue for the purposes of this Order. Her apparent inconsistencies are notable, though may be explained by, for example, efforts to refresh her recollection prior to completing her affidavit.

up from home and drove them to the Brookville facility of the Association for the Help of Retarded Children of Nassau County ("Brookville"). *See* Rule 56.1 Statement ¶ 7. Defendant concedes that plaintiff performed her job satisfactorily through at least late July 2006.[2] *See* Rule 56.1 Statement ¶ 8.

Plaintiff highlights three incidents that precipitated her resignation from Acme. Pl.'s Resp. 1 ("I in fact made 3 separate complaints to management between June and July 2006. . . ."). First, plaintiff alleges that a young, African–American passenger had to relieve himself during one of the bus trips on or around June 2006. *See* Pl.'s Depo. Tr. 113:16–25. Plaintiff claims to have urged Mr. Massey to pull over at an appropriate facility, in response to which Mr. Massey told plaintiff to "give the client a pail to relieve himself in." Pl.'s Resp. 2. Plaintiff did not tell management about the incident until August 7, 2006. *Id.;* Pl.'s Depo. Tr. 114:2–4.

On a second occasion, plaintiff alleges that Mr. Massey aggressively grabbed a quadriplegic passenger, Elizabeth, by the neck, in response to an episode of spasms from which Elizabeth was suffering. Pl.'s Resp. 4. Plaintiff claims that, upon arrival of the Acme bus at Brookville, medical staff treated Elizabeth's condition with urgent efforts. *See id.* ("The Brookville Nurse upon boarding the bus shouted with a great deal of urgency 'she's going into spasms get her off the bus.' "). Plaintiff claims to have reported the incident to Acme dispatcher Denise Cortes ("Ms. Cortes") at the time, and Acme failed to discipline Mr. Massey. *Id.* at 5–6. In fact, plaintiff claims that her supervisor

Barbara Lawrence ("Ms. Lawrence") reassigned *her* to a new route for two days, because of perceived "issues at home." *Id.* at 6.

Third, plaintiff claims that a different Acme driver failed to respond to plaintiff's request to address passenger needs. *Id.* at 6–7. Plaintiff filled in for another matron on Saturday, July 29, 2006. *Id.* at 6. During the bus trip, one passenger began hitting another passenger. *Id.* Plaintiff requested the driver's guidance on how to handle the conflict, based on the driver's familiarity with the passengers and their routine, but the driver failed to provide such guidance.[3] *Id.* at 6–7. On the trip back from Brookville, plaintiff reported that one passenger's wheelchair was broken, but the driver again failed to adequately assess and remedy the problem. *Id.* at 7.

According to plaintiff, each of these episodes violates a different provision of defendant's internal rules and policies. *See, generally,* Pl.'s Resp.

In the wake of the events of July 29, 2006, plaintiff apparently stopped coming to work. *See id.* at 7; Rule 56.1 Statement ¶¶ 11–12. Plaintiff states that she telephoned Ms. Cortes to alert her to plaintiff's "reluctance to come to work until an adequate resolution could be met" concerning her disagreements with the drivers. Pl.'s Resp. 7. Plaintiff claims that Ms. Cortes attempted to reassure her, but plaintiff stayed home nevertheless. *Id.* Plaintiff then refused to return to work for eleven days. *Id.* Plaintiff claims that she called in daily to leave a

---

**2.** When plaintiff asked, "How well do I work?" during Ms. Lawrence's deposition, she responded, *"I never had any complaints."* Lawrence Depo. Tr. 12:11–12 (emphasis added).

**3.** Plaintiff claims that she "asked the driver for direction on how the clients should *disembark." Id.* at 6 (emphasis added). The context suggests that plaintiff used the term 'disembark' to mean 'disengage' or 'separate.'

voicemail, pursuant to an unidentified Acme policy.[4] *Id.* Plaintiff eventually called and spoke to Ms. Lawrence on August 7, 2009. *Id.* Ms. Lawrence advised plaintiff, first, that plaintiff would continue to work with Mr. Massey, and second, that plaintiff would require a doctor's note to excuse her extended absence. Pl.'s Depo. Tr. 115:20–116:4. Plaintiff testified, with some uncertainty, that Ms. Lawrence told her to return to work "Tuesday," *id.* 116:7–8, although she also maintains that Ms. Lawrence instructed her to remain at home until Ms. Lawrence investigated the allegations about Mr. Massey's June 2006 conduct. Pl.'s Resp. 7–8.

Plaintiff returned to work on Wednesday, August 9, 2009. *Id.* at 8. According to plaintiff, Ms. Cortes and another Acme employee presented her with a form that Ms. Lawrence wanted plaintiff to sign. *Id.* The form was a resignation form. *Id.* Plaintiff signed the form. *Id.*

Plaintiff notes that "white male and female counterparts who violated company policy remain [Acme] employees." *Id.* at 9. Plaintiff also claims that she called Acme's offices on August 10, 2006, the day after her resignation, and overheard an Acme employee named Gina Chiarelli remark, "that black such and such thinks we going to—you know, believe her over John." Pl. Depo. Tr. 147:16–18.

However, plaintiff also alleges that "I was forced to resign due to the complaints I made to management." Pl.'s Resp. 9. Plaintiff believes that defendant wanted to silence her complaints because defendant risked losing a pending recertification, which would have cost it the contract with

the Association for the Help of Retarded Children. *Id.* at 11.

## DISCUSSION

### Summary Judgment Standard in Employment Discrimination Cases

█ "The submission of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman,* 470 F.3d at 474, including when facing a summary judgment motion. *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003). Nevertheless, the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* Thus, a motion for summary judgment must be granted if the motion and supporting papers demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a); *see also, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Courts considering motions for summary judgment in discrimination cases are also "obliged to exercise particular caution ... because direct evidence of an employer's discriminatory intent is rare and 'must often be inferred from circumstantial evidence.'" *Serby v. N.Y. City Dep't of Educ.,* 2012 WL 928194, at *5 (E.D.N.Y. Mar. 19, 2012) (quoting *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 603 (2d Cir.2006) (quotation marks and citation omitted)).

---

4. Plaintiff states that she "would call as early as 6 a.m.," but "would always get the office voicemail." Pl.'s Resp. 7. Plaintiff's concession that she spoke once to the dispatcher and otherwise only left voicemails on the Acme office line between July 30 and August 7,

2012 raises the considerable likelihood, however diminished by the inferences drawn in plaintiff's favor, that her supervisors were completely unaware of the reasons plaintiff cites for her absence until plaintiff had accrued more than a week of missed time.

It is, however, "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001). Thus, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997); *see also Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) (plaintiff "may not rely on conclusory allegations or unsubstantiated speculation"). "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted). The Second Circuit has held that:

> In discrimination cases, the inquiry into whether the plaintiff's sex (or race, etc.) caused the conduct at issue often requires an assessment of individuals' motivations and state of mind, matters that call for a sparing use of the summary judgment device because of juries' special advantages over judges in this area. Nonetheless, an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts. She must come forth with evidence sufficient to allow a reasonable jury to find in her favor.

*Brown v. Henderson,* 257 F.3d 246, 251–252 (2d Cir.2001) (citations and internal quotations omitted).

The Second Circuit applies the following test, originally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), on a motion for summary judgment:

> To withstand a summary judgment motion on a Title VII discrimination claim, the plaintiff must first show that: (1) he is a member of a protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. This burden is minimal. If the plaintiff satisfies his minimal burden of establishing a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. If the defendant does so, then the plaintiff must prove that the articulated justification is in fact a pretext for discrimination.

*Desir v. Bd. of Co-op. Educ. Servs. (BOCES) Nassau Cnty.,* 469 Fed.Appx. 66, 67 (2d Cir.2012) (citations and internal quotations omitted).

There are also procedural requirements tied to contesting a motion for summary judgment. Local Rule 56.1 of the United States District Courts of the Southern and Eastern Districts of New York ("Rule 56.1") requires that any motion for summary judgment be accompanied by a list of the "material facts as to which the moving party contends there is no genuine issue to be tried." S.D.N.Y & E.D.N.Y. R. 56.1(a). The nonmoving party must respond to each numbered allegation in the moving party's statement and include, if necessary, a statement of the additional material facts as to which a genuine issue exists. S.D.N.Y & E.D.N.Y. R. 56.1(b). In the typical case, failure to respond to a Rule 56.1 statement results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met. *T.Y. v. N.Y. City Dep't of Educ.,* 584 F.3d 412, 417–418 (2d Cir.2009).

**Application to the Instant Case**

**A. Procedure in Summary Judgment Cases**

■ While the record quite clearly reflects that plaintiff failed to submit a state-

ment conforming to Rule 56.1, this oversight alone does not warrant a grant of summary judgment in defendant's favor. The Court construes the *pro se* litigant's submissions liberally. *Triestman*, 470 F.3d at 474. Plaintiff disputes, at length, the allegations in defendant's Rule 56.1 statement in her response to the motion for summary judgment. *See generally* Pl.'s Resp. This same document sets forth additional facts for the Court's consideration. *Id.* This satisfies the spirit, if not the letter, of Rule 56.1.

### B. Prima Facie Case

The parties do not contest the first or second elements of the test set forth in *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. Plaintiff, as an African–American, is a member of a protected class. Defendant raises no argument that plaintiff was unqualified for her position as a matron. Defendant instead contends that plaintiff cannot establish the third and fourth elements of the *prima facie* case: that she suffered adverse employment action, and that defendant's conduct gives rise to an inference of discrimination.

Defendant argues, and can submit considerable evidence to support, that plaintiff suffered no adverse employment action. Plaintiff failed to report to work for more than a week before speaking with her assigned supervisor. *See supra* p. 4. Plaintiff signed a letter of resignation. Pl.'s Resp. 8; Pl.'s Depo. Tr. 131:21–23. Plaintiff also testified to facts that support the possibility that her resignation was voluntary, including the fact that she only signed the form several hours after it was handed to her. Pl.'s Depo. Tr. 130:3–6 ("Q. So, approximately how long were you there? A. I don't know, maybe like two hours.").

However, plaintiff also consistently maintained that she was compelled to sign the resignation form, and she must be afforded the inference that a trier of fact could find that she was constructively discharged. Courts typically address claims of constructive discharge in the hostile work environment context, where the plaintiff "must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Penn. State Police v. Suders*, 542 U.S. 129, 134, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). The Second Circuit has found that a supervisor's statement that the plaintiff would be fired at the end of his probationary period, even should performance improve, could "alone suffice[ ] to establish a constructive discharge." *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987). Plaintiff argues that she felt forced to resign when Acme employees conveyed instructions from Ms. Lawrence that plaintiff sign the resignation form. *See* Pl.'s Resp. 9; Pl.'s Depo. Tr. 131:3–5 ("I said, you know what? I remember them saying that I have to follow directions. You have to do it. She told me to do this."); *id.* at 132:3–6 ("Q. Why did you start to fill out this form? A. Because Denise said Barbara said to sign it."). Defendant lends plaintiff's version of events an additional ring of truth when defendant admits that it was prepared to terminate plaintiff's employment the very same afternoon, in the event she decided not to resign. *See* Mot. for Summ. J. Ex. 6, at 10. Plaintiff's claims, construed liberally, raise a genuine issue of material fact as to whether she suffered adverse employment action within the meaning of Title VII.

 In contrast, plaintiff does not put at issue the question of whether the circumstances give rise to an inference of discrimination. A plaintiff may raise an inference of discrimination by showing that the employer treated her less favor-

ably than a similarly situated employee outside the same protected class. *Graham v. Long Island RR*, 230 F.3d 34, 39 (2d Cir.2000) (citing cases). "Plaintiff need not find so-called 'comparators' situated identically to herself, but they must be "similarly situated in all material respects".... "[T]here should be a reasonably close resemblance of facts and circumstances" between plaintiff and her colleagues who escaped the purported discriminatory treatment." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir.2001).

█ Plaintiff does not provide any evidence that defendant treated her differently than similarly situated coworkers on the basis of race. Plaintiff argues that, while she lost her job with defendant, "white male and female counterparts who violated company policy remain employees." Pl.'s Resp. 9. This apparently references Ms. Cortes and Mr. Massey. *See, e.g., id.* at 3 ("Mr. Massey and Ms. Cortes hid this incident from Upper Level Management...."). Mr. Massey and Ms. Cortes are not comparators to plaintiff. Mr. Massey and Ms. Cortes apparently had longer tenures at Acme than plaintiff, *see* Lawrence Depo. Tr. 5, 6; Ms. Cortes appears to have acted as a supervisor to both Mr. Massey and plaintiff at times, *see, e.g.,* Def. 56.1 Statement ¶ 12 ("Defendant's dispatcher, Denise Cortes, contacted Plaintiff by telephone regarding her absences."); and each of the three performed different job responsibilities. Lawrence Depo. Tr. 5, 6. However, the most notable difference is that plaintiff refused to return to work for more than a week on her own initiative, while her colleagues did not. Even assuming, as plaintiff alleges, that Mr. Massey violated Acme policy by, *inter alia,* failing to stop the bus at appropriate times, engaging in inappropriate contact with passengers, and failing to report passenger problems, *see* Pl.'s Resp. 3–5; and that Ms.

Cortes violated company policy by failing to report the incidents, *id.* at 10; these violations are not on a par with Ms. Parris' unexcused absences at work, and these former colleagues are not similarly situated "in all material respects." *Lizardo,* 270 F.3d at 101. Plaintiff provided defendant with good reason to think that she had abandoned her job, and there is no evidence that defendant based its response to that perceived abandonment on plaintiff's race.

█ Plaintiff's evidence, other than the inapt 'comparators,' is insufficient. Plaintiff points to a co-worker's single purported racist remark. "Stray remarks ... without more, cannot prove a claim of employment discrimination." *Abdu–Brisson,* 239 F.3d at 468 (citing *Woroski v. Nashua Corp.,* 31 F.3d 105, 109–110 (2d Cir.1994)). Plaintiff's conclusory allegations that she was subject to racial discrimination likewise cannot defeat a motion for summary judgment. *Schwapp,* 118 F.3d at 110. The Court accordingly finds that no genuine issue of material fact exists concerning any purported inference of racial discrimination.

Plaintiff's claim of disparate treatment should be resolved in defendant's favor because plaintiff fails to make out *a prima facie* case. However, given that the Second Circuit has emphasized the "minimal" nature of the *prima facie* showing, *see Desir,* 2012 WL 1674289, I will assume, *arguendo,* that plaintiff has made such a showing. As demonstrated below, plaintiff fails to rebut defendant's legitimate reason for its adverse action.

### C. Defendant's Legitimate Reason for its Adverse Action, and Plaintiff's Failure to Rebut

█ Even assuming that plaintiff has established a *prima facie* case, defendant has offered a legitimate, unrebutted reason

for plaintiff's termination, to wit: plaintiff's eleven-day unexcused absence from work. This establishes a legitimate, non-pretextual basis for defendant's adverse action. *See, e.g., Stephen v. Maximum Sec. & Investigations, Inc.*, No. 99–Civ–4313, 2000 WL 1774849, at *6 (S.D.N.Y. Dec. 4, 2000) ("[Plaintiff's] history of 'no-shows/no-calls' and the perception of his increasing unavailability for work constituted a legitimate, nondiscriminatory reason for his termination"). Plaintiff justifies her absence from work on the basis that she "followed the direction of my employer through Ms. Lawrence to remain at home, call in each day, and wait for them to 'resolve' the problem," Pl.'s Resp. 9, but plaintiff only spoke to Ms. Lawrence after *nine days* of absences. *See supra* p. 4; *supra* note 4 ("Plaintiff [concedes] that she spoke once to the dispatcher and otherwise only left voicemails on the Acme office line between July 30 and August 7, 2012 ...."). The record, including plaintiff's own proffered statements, reflects that she stayed home on her own accord, providing defendant a legitimate reason to dismiss her.

■ Once defendant points to a non-discriminatory reason for its action, the plaintiff must prove that the articulated justification is in fact a pretext for discrimination, *Desir*, 469 Fed.Appx. at 67, which plaintiff here fails to do. As noted above, plaintiff can point to no other Acme employee who, on their own initiative, stayed away from work for nearly two weeks and escaped the repercussion plaintiff suffered. *See supra* pp. 390–91, 394. Plaintiff must provide evidence of disparate treatment; she cannot show pretext "by offering purely conclusory allegations of discrimination." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). Plaintiff does not genuinely rebut defendant's asserted rationale for her dismissal, and accordingly her disparate treatment claim should be dismissed.

### D. Potential Additional Claims

■ In searching the record, two possible additional claims come to light which, although ultimately far from persuasive, bear mentioning. First, defendant posits that "[p]laintiff's discrimination claims under Title VII, [sic] may proceed under two theories: disparate treatment and hostile work environment." Mot. for Summ. J. Ex. 6, at 3. In order to establish a hostile work environment claim, a plaintiff that her workplace is "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [plaintiff's] employment were thereby altered." *Joseph v. N. Shore Univ. Hosp.*, 473 Fed.Appx. 34, 37 (2d Cir.2012) (citing *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir.2002)).

> A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive.... The plaintiff must show more than a few isolated incidents of racial enmity, although a hostile work environment can also be established through evidence of a single incident of harassment that is 'extraordinarily severe.'

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir.2010) (internal citations and quotation marks omitted). "A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir.1999). Plaintiff here fails to show that harassment pervaded her workplace, or that she was harassed on the basis of her race. Plaintiff can only identify a single racist remark, occurring after her tenure at Acme concluded. Notably, plaintiff herself posits other reasons for the degradation of the employment relationship: plaintiff felt

compelled to resign "due to the complaints *I made* to management." Those complaints concerned, at their core, coworkers' treatment of disabled passengers, not minority employees.[5] Because plaintiff fails to point to facts indicating in any way that the work environment at Acme was pervaded with hostility, or that plaintiff was subjected to hostile conduct on the basis of her race, she cannot make out an actionable claim on such grounds.

 Defendant also notes that plaintiffs' claims of discrimination could be viewed as a cause of action for retaliation, although this also clearly fails. Plaintiff feels that she "was forced to resign due to the complaints I made to management." Pl.'s Resp. 9. Plaintiff complained concerning Acme's treatment of its passengers. The law within the Circuit is that a complaint of retaliation, for opposing discrimination by co-employees against non-employees, is not cognizable under Title VII. *See Wimmer v. Suffolk Cnty. Police Dep't,* 176 F.3d 125, 135 (2d Cir.1999) (finding that a police officer could not make out a claim for retaliation where he was allegedly terminated for opposing his employer's alleged discrimination against the public); *see also Taneus v. Brookhaven Mem. Hosp. Med. Ctr.,* 99 F.Supp.2d 262, 267 (E.D.N.Y.2000) (granting summary judgment against former employee of hospital who claimed that she was retaliated against for her complaints concerning hospital's policy towards patients of Haitian national origin). Because plaintiff here complains of her co-workers' discrimination against third-party passengers, her retaliation claim cannot lie.

## CONCLUSION

For all of the reasons set forth above, I find that plaintiff has failed to establish a *prima facie* case of discrimination; and, even assuming that she has done so, defendant provided a legitimate, non-pretextual reason for its adverse employment action that plaintiff fails to rebut. If plaintiff's allegations are construed to allege a hostile work environment or retaliation, no genuine issue of material fact exists that would support those claims. As such, I hereby recommend that defendant's motion for summary judgment be GRANTED in its entirety, and the complaint dismissed.

## OBJECTIONS

The Clerk of the Court is hereby directed to mail a copy of this Report and Recommendation to the representatives of each of the parties. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed.R.Civ.P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.** *Thomas v. Arn,* 474 U.S. 140, 145, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.,* 517 F.3d 601, 604 (2d

---

5. *Of course, nothing here should be viewed as sanctioning the kind of conduct by defendant that plaintiff has alleged. Plaintiff describes acts taken against disabled passengers that, if true, can only be described as abuse and neglect. However, this conduct is not action-* able in a Title VII action brought by plaintiff. "Title VII is not a general 'bad acts' statute. Rather, the conduct it prohibits is specifically set forth. . . ." *Wimmer v. Suffolk Cnty. Police Dep't,* 176 F.3d 125, 135 (2d Cir.1999).

Cir.2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York, August 31, 2012.